**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CHRIS CARRIGAN, MICHAEL VENTI, SYLVAIN YELLE, *individually and as representatives of a class of similarly situated persons*,<br><br>*Plaintiffs*,<br><br>v.<br><br>XEROX CORP., XEROX CORPORATION PLAN ADMINISTRATOR COMMITTEE, JOHN DOES 1-30,<br><br>*Defendants*. | 3:21-CV-1085 (SVN)<br><br><br><br><br><br><br><br><br>April 18, 2022 |

**RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

Three Plaintiffs, Chris Carrigan, Michael Venti, and Sylvain Yelle, bring this putative class action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, on behalf of themselves and fellow participants of the Xerox Corporation Savings Plan (the "Plan"). They claim that Defendants—Xerox Corp. ("Xerox"), the Plan's sponsor; the Xerox Corporation Plan Administrator Committee (the "Committee"), which administers the Plan; and John Does 1–30, unidentified members of the Committee—are fiduciaries of the Plan and, accordingly, owe fiduciary duties of loyalty and prudence to the Plan participants pursuant to ERISA, § 1104(a)(1)(A), (B). Plaintiffs' two-count complaint alleges: (1) that all Defendants breached their duties of loyalty and prudence by causing the Plan to pay excessive recordkeeping fees to recordkeepers affiliated with the Plan sponsor, and (2) that Xerox and John Does 1–30 breached their fiduciary duty to monitor the Committee's administration of the Plan.

Defendants seek to dismiss Plaintiffs' action, contending that Plaintiffs fail to state a claim for breach of fiduciary duty of loyalty or prudence.[1] Plaintiffs disagree, claiming that their allegations are sufficient to state a claim at this early stage of the litigation and noting that the duties of loyalty and prudence imposed by ERISA are the most stringent duties of their kind under the law.

For the following reasons, the Court agrees with Plaintiffs and thus DENIES Defendants' motion to dismiss.

## I.  FACTUAL BACKGROUND

The Court accepts the allegations of the complaint as true on a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Xerox, a publicly traded corporation headquartered in Connecticut, sponsors the Xerox Corporation Savings Plan, a 401(k) plan for its eligible United States employees. Compl., ECF No. 1, ¶¶ 1, 16, 22. Plaintiffs allege that the Plan is a "defined contribution plan" within the meaning of 29 U.S.C. § 1002(34). *Id.* ¶ 17. Generally, "[i]n such plans, participating employees maintain individual investment accounts, which are funded by pretax contributions from the employees' salaries and, where applicable, matching contributions from the employer. Each participant chooses how to invest their funds . . . from the menu of options selected by the plan administrators. . . . The performance of [the participant's] chosen investments, as well as the deduction of any associated fees, determines the amount of money the participant will have saved for retirement." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 740

---

[1] The Chamber of Commerce of the United States received leave from the Court to file an *amicus* brief in support of Defendants' motion. The *amicus* brief argues that this case is one of many raising the same, nonspecific allegations, which ultimately adversely impact the administration of employee retirement plans. As the argument of *amicus* does not bear directly on the legal question at issue here—whether Plaintiffs' complaint states plausible claims for relief— the Court does not address it.

2

(2022). From 2015 through 2019, the last year for which data is available, the Plan had between 21,000 and 30,000 participants and between $3.6 billion and $4.3 billion in assets. Compl. ¶ 18.

The document that established the Plan also created the Committee, which administers the Plan. *Id.* ¶ 25. Committee members are appointed and removed at the discretion of Xerox's Vice President of Human Resources. *Id.* ¶ 24. The administration of the Plan generates various expenses, particularly with regard to "recordkeeping" services. Generally, "[r]ecordkeepers help plans track the balances of individual accounts, provide regular account statements, and offer information and accessibility services to participants." *Hughes*, 142 S. Ct. at 740; *see also* Compl. ¶ 33 n.8 (listing a number of services typically performed by recordkeepers). With respect to this Plan, the Committee hires and monitors the Plan's recordkeeper. Compl. ¶ 25. The recordkeeper's fee is borne by Plan participants in the form of a flat annual fee per participant, deducted from their investments. *Id.* ¶ 20.

Plaintiffs allege that the market for recordkeeping services is highly competitive with respect to plans as large as this one, resulting in declining recordkeeper fees between 2006 and 2016. *Id.* ¶ 37. Moreover, Plaintiffs allege that plans of this size are generally able to negotiate for low recordkeeping fees because their large size presents economies of scale. *Id.* ¶ 39.

The Plan had two different recordkeepers during the relevant time period. From 2015[2] to 2017, the Plan hired Xerox HR Benefits Services ("Xerox HR"), a wholly-owned subsidiary of Defendant Xerox Corp. *Id.* ¶¶ 41–42. Accordingly, all profits accrued by Xerox HR in the administration of the Plan passed on to Xerox. *Id.* ¶ 42. In 2017, Xerox HR spun off into Conduent Human Resource Services ("Conduent"), and the Plan's recordkeeping services were thereafter

---

[2] At oral argument, Plaintiffs clarified that although the Plan hired Xerox HR to serve as recordkeeper in 2013, Plaintiffs' excessive recordkeeping fee claim pertains to Defendants' conduct since 2015 in light of the applicable statute of limitations.

provided by Conduent. *Id.* ¶ 43. Notwithstanding the spinoff, however, Plaintiffs allege that Xerox "retained significant equity in Conduent," and that Conduent's relatively small client portfolio rendered Xerox a significant client for Conduent. *Id.* Conduent served as the Plan's recordkeeper until the Plan hired an unaffiliated recordkeeper in 2021. *Id.* ¶ 41. In sum, Plaintiffs allege that the profits incurred by the two recordkeepers hired by the Plan between 2015 and 2021 flowed to Xerox—the Plan sponsor with discretionary control over the Committee's administration of the Plan.

Plaintiffs further allege that these two affiliated recordkeepers caused the Plan to incur unreasonable and excessive expenses. Specifically, Plaintiffs note a dramatic increase in the participant fee throughout the relevant period for which data is available. The fee went from $70 in 2015 for Xerox HR; to $69 in 2016; to $123 in 2017 when the recordkeeper switched from Xerox HR to Conduent; to $118 in 2018; to $136 in 2019. *Id.* ¶ 44.

Plaintiffs allege that these fees are unreasonably excessive in light of the fees charged by comparable recordkeepers to comparable plans. Specifically, Plaintiffs allege that, during the relevant time period, "a prudent and loyal fiduciary of a similarly sized plan . . . could have obtained comparable recordkeeping services of like or superior quality for $30 to $35 per participant (or possibly lower) from recordkeepers such as Fidelity, Vanguard, Alight, and Empower." *Id.* ¶ 45. Plaintiffs further allege that various comparable plans paid recordkeeping fees of $35 per participant or less each year between 2015 and 2019, including plans sponsored by Bechtel, WPP Group USA, Kinder Morgan, Nike, Caterpillar, and Henry Ford Health System. *Id.* In light of these comparators, Plaintiffs allege, the recordkeeping fees associated with administering the Xerox Plan were excessive.

Accordingly, Plaintiffs brought the two-count complaint for breach of fiduciary duties under ERISA, § 104(a)(1)(A) and (B).  The first count raises a claim for breach of the fiduciary duties of prudence and loyalty with respect to all Defendants.  Compl. ¶¶ 60–61.  Specifically, Plaintiffs claim that a loyal and prudent plan administrator under the circumstances would have engaged in monitoring to keep recordkeeping fees at competitive levels, and that Defendants failed to do so because the excessive recordkeeping fees financially benefited Xerox.  *Id.* ¶¶ 47, 60.  The second count raises a claim that Defendants Xerox and John Does 1–30 breached their fiduciary duties to monitor the Committee's administration of the Plan.  *Id.* ¶ 68.  Plaintiffs assert their claims on behalf of themselves as well as a putative class consisting of "[a]ll participants and beneficiaries of the [Plan] from August 11, 2015 until" the Plan switched to an unaffiliated recordkeeper in 2021.  *Id.* ¶ 50.

In lieu of an answer, Defendants filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  ECF No. 53.  With respect to the duty of prudence, Defendants primarily contend that the complaint contains no allegations concerning the services provided by the recordkeepers, which they maintain are necessary to plausibly state a claim that the fees for those recordkeeping services were excessive.  Plaintiffs dispute that a claim of excessive recordkeeping fees must contain allegations regarding the specific nature of the services rendered because recordkeeping services, unlike investment management services, are standardized.  With respect to the duty of loyalty, Defendants contend that mere allegations of an affiliation between Xerox and the recordkeepers are not enough to support a reasonable inference of disloyalty.  Plaintiffs disagree, contending that their complaint supports a reasonable inference that Defendants retained the affiliated recordkeepers for the purpose of benefiting themselves at the expense of the Plan participants.

## II.  LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The facial plausibility standard requires more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement." *Id.* (citation and internal quotation marks omitted). However, it "is not akin to a probability requirement," nor does it require "detailed factual allegations[.]" *Id.* (citation and internal quotation marks omitted). The Court must "accept[] as true the complaint's factual allegations and draw[] all inferences in the plaintiff's favor." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (citation omitted). The Court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

### B. ERISA: Duties of Loyalty and Prudence

"ERISA's central purpose is to protect beneficiaries of employee benefit plans." *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 715 (2d Cir. 2013) (hereinafter *Morgan Stanley*) (citation and internal quotation marks omitted). To that end, ERISA charges Plan fiduciaries with various "distinct, but interrelated duties," including duties of prudence and loyalty. *Id.* "To state a claim for breach of fiduciary duty, a complaint must allege that (1) the defendant was a fiduciary who (2) was acting

in a fiduciary capacity, and (3) breached [their] fiduciary duty." *Sandoval v. Exela Enter. Sols., Inc.*, No. 3:17-cv-1573 (DJS), 2020 WL 9259208, at *3 (D. Conn. Mar. 30, 2020) (citation and internal quotation marks omitted); *see also* 29 U.S.C. § 1109.[3]  At oral argument, Defendants conceded that Plaintiffs plausibly alleged the first two elements, namely, that Defendants were Plan fiduciaries acting in a fiduciary capacity during the relevant time.

Turning to the breach of duty element, ERISA imposes a variety of duties on plan fiduciaries.  The duty of prudence requires a plan fiduciary to "discharge his duties with respect to a plan . . . (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]"  29 U.S.C. § 1104(a)(1).  The duty of loyalty requires a plan fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan[.]"  29 U.S.C. § 1104(a)(1).  These fiduciary duties, as well as the others imposed by ERISA, are "derived from the common law of trusts," and courts look to the law of trusts in "determining the contours" of those duties.  *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015) (citations and internal quotation marks omitted).  *See also Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982) ("The fiduciary obligations of the [plan administrators] to the participants and beneficiaries of the plan are those of trustees of an express trust—the highest known to the law.").

With respect to the duty of prudence, "[a]n ERISA fiduciary must discharge [their] responsibility 'with the care, skill, prudence, and diligence' that a prudent person 'acting in a like

---

[3] 29 U.S.C. § 1109(a) provides, in relevant part: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to other equitable or remedial relief as the court may deem appropriate[.]"

7

capacity and familiar with such matters' would use." *Tibble*, 575 U.S. at 528 (quoting § 1104(a)(1)). "Prudence, as required by ERISA, is measured according to the objective prudent person standard developed in the common law of trusts." *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006) (citation and internal quotation marks omitted). Because the court must "judge a fiduciary's actions based upon information available to the fiduciary" at the time of the disputed decision, without the benefit of hindsight, the proper analysis centers on "whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular [decision]." *Morgan Stanley*, 712 F.3d at 716 (citations and internal quotation marks omitted). *See also Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-cv-6685 (ALC), 2019 WL 4466714, at *5 (S.D.N.Y. Sept. 18, 2019) ("In other words, courts analyze a fiduciary's *process* to determine prudence, not outcome.").

The inquiry into a plan fiduciary's decision-making process is necessarily context-specific. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). As such, in considering a motion to dismiss, a district court must particularly ensure "that the [c]omplaint alleges *nonconclusory* factual content raising a *plausible* inference of misconduct and does not rely on the vantage point of hindsight. On the other hand, [the court ought to be] cognizant that ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Sacerdote v. New York Univ.*, 9 F.4th 95, 107 (2d Cir. 2021) (citations and internal quotation marks omitted) (quoting *Morgan Stanley*, 712 F.3d at 718), *cert. denied*, 142 S. Ct. 1112 (2022). Accordingly, the allegations of a complaint need not "directly address" the process by which the plan was managed. *Morgan Stanley*, 712 F.3d at 718 (citations and quotation marks omitted). Rather, "[a] claim for breach of the duty of prudence will survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged

8

that the process was flawed or that an adequate investigation would have revealed to a reasonable fiduciary that the [decision] at issue was improvident." *Sacerdote*, 9 F.4th at 108 (internal quotation marks omitted) (quoting *Morgan Stanley*, 712 F.3d at 718). *See also Ferguson*, 2019 WL 4466714, at *5 (noting that, when a plaintiff relies on "inferences from circumstantial allegations, this standard generally requires the plaintiff to allege facts, accepted as true, showing that a prudent fiduciary in like circumstances would have acted differently").

To that end, a plan fiduciary's duty of prudence incorporates an ongoing duty to monitor the prudence of investment options and recordkeeping fees, in order to be cost-conscious in administering their duties. *See Hughes*, 142 S. Ct. at 741–42; *Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 213 (D. Mass. 2020) (citing Restatement (Third) of Trusts, § 88 cmt. A (2007) and *Tibble*, 843 F.3d at 1197–98, and collecting cases regarding recordkeeping fees). With respect to a claim of imprudently excessive recordkeeping fees, courts in this circuit have considered, among others, allegations pertaining to excess compensation relative to particular services rendered by the recordkeeper, *Sandoval*, 2020 WL 9259108, at *7; the fees of comparable plans and recordkeepers at the time, *Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 684 (D. Conn. 2018); and the bargaining power of the plan to negotiate competitive recordkeeping fees, *In re Omnicom ERISA Litig.*, No. 20-cv-4141 (CM), 2021 WL 3292487, at *15 (S.D.N.Y. Aug. 2, 2021).

Turning to the duty of loyalty, the Second Circuit has instructed that a decision of a plan fiduciary "must be made with an eye single to the interests of the participants and beneficiaries." *Donovan*, 680 F.2d at 271. A plan fiduciary's action which "incidentally benefits" the plan sponsor does not violate the duty of loyalty so long as, "after careful and impartial investigation, [the plan fiduciary] reasonably conclude[s] [that the action is] best to promote the interests of participants and beneficiaries[.]" *Id.* However, allegations "supporting an inference that the defendant acted

*for the purpose* of providing benefits to itself or someone else," at the expense of plan participants, may state a claim for breach of the duty of loyalty. *See Ferguson*, 2019 WL 4466714, at *4.

Finally, the survival of Plaintiffs' claim that Defendants Xerox and John Does 1–30 failed to monitor the Committee's administration of the Plan will generally depend on the survival or failure of their claims that all Defendants breached their duties of loyalty and prudence. Under ERISA, a plan fiduciary with discretion to appoint and remove members of the committee that administers the plan "has a duty to monitor those appointees" and may be held liable for failing to monitor the committee members' administration of the plan. *Omnicom*, 2021 WL 3292487, at *16 (citation and internal quotation marks omitted). Accordingly, "[c]ourts have been willing to find a failure to monitor claim if the plaintiff has adequately alleged a breach of fiduciary duty claim." *Id.* (citation and internal quotation marks omitted); *see also id.* at *2 (noting that, if the plaintiffs fail to state a claim for breach of fiduciary duty, they will have failed to state a claim for failure to monitor as well).

### III.  DISCUSSION

#### A.  Duty of Prudence

Plaintiffs have plausibly alleged that Defendants breached the duty of prudence by retaining affiliated recordkeepers that charged excessive fees under circumstances that would have alerted a reasonably prudent fiduciary of the need to investigate further. Specifically, the complaint contains the following circumstantial allegations: for five years, Defendants retained recordkeepers whose profits flowed to Xerox; during that time period, the Plan's recordkeeping fees increased, nearly doubling in 2017; during that time period, other recordkeepers were available to provide comparable services for significantly lower fees; such recordkeepers in fact charged fees of $35 per participant to recordkeep for plans of roughly similar size to the Xerox

Plan; and, given its size, the Plan would have had a certain degree of bargaining power, but the Plan did not attempt to leverage a competitive recordkeeping fee from the affiliated recordkeepers or a competitor. Compl. ¶¶ 40–46. Accepting these circumstantial allegations as true, the Court concludes that Plaintiffs have plausibly claimed that "an adequate investigation would have revealed to a reasonable prudent fiduciary" that the retention of the affiliated recordkeepers was "improvident," *see Sacerdote*, 9 F.4th at 108 (citation and internal quotation marks omitted), such that "a prudent fiduciary in like circumstances would have acted differently." *See Morgan Stanley*, 712 F.3d at 720.

Defendants maintain that Plaintiffs do not allege specific details that, if true, would establish that the process by which the Committee hired the recordkeepers was imprudent. However, Plaintiffs need not include such specific allegations. *See id.* at 718 (noting that a complaint may survive a motion to dismiss even if it does not "directly address[] the process by which the [p]lan was" administered because "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail" prior to discovery (citations and internal quotation marks omitted)); *Sacerdote*, 9 F.4th at 107 (noting that "a claim under ERISA may withstand a motion to dismiss based on sufficient circumstantial factual allegations to support the claim, even if it lacks direct allegations of misconduct"). Rather, Plaintiffs' circumstantial allegations allow the Court to "reasonably infer" that the process by which the Committee hired the recordkeepers "was flawed," and that a reasonably prudent plan fiduciary would have handled such circumstances differently. *See id.* (citations and internal quotation marks omitted); Compl. ¶¶ 42–47. In paragraph 47 in particular, Plaintiffs allege that a prudent fiduciary would have performed a benchmarking analysis or solicited bids for recordkeeping services through a request for proposal—which the Court infers Defendants did not do.

11

Indeed, several of the circumstances alleged by Plaintiffs have been found adequate to state a claim by other courts in this circuit. For example, one district court denied a motion to dismiss where the complaint contained allegations from a publication regarding industry average administrative fees, as well as specific allegations that the same recordkeeper that provided services for the plan at issue provided services for other plans of comparable size at a lower fee. *Omnicom*, 2021 WL 3292487, at *15 (holding that the plaintiffs' allegations that the recordkeeper "charges a much lower rate to other, more comparable plans . . . is enough to get them past this motion to dismiss"). Likewise, a court in this district denied a motion to dismiss where the complaint alleged that the plan's recordkeeping fee was excessive "compared to other plans' fees" and compared with the industry averages at that time. *Garthwait v. Eversource Energy Co.*, No. 3:20-cv-902 (JCH), 2021 WL 4441939, at *8–9 (D. Conn. Sept. 28, 2021). *See also Vellali*, 308 F. Supp. 3d at 685 (denying a motion to dismiss where the complaint "compare[d] the general range of costs for" recordkeepers of similar plans).

In this case, Plaintiffs have plausibly alleged that an adequate decision-making process would have revealed to a reasonably prudent Plan administrator in Defendants' position that other recordkeepers, such as Fidelity, Vanguard, Alight, and Empower, were available to provide comparable services at costs in the range of $30 to $35 per participant per year.[4] Compl. ¶ 45. Plaintiffs further allege that various plans of comparable size to Xerox's Plan in fact paid annual

---

[4] Defendants' reply makes much of Plaintiffs' use of the word "prominent" to describe these other recordkeepers. The Court takes Plaintiffs' use of this word not to mean, as Defendants suggest, that the Plan was required to hire a bigger or more well-known recordkeeper. Rather, Plaintiffs appear simply to identify certain other recordkeepers as "leading recordkeepers in the industry" from whom bids could have been sought by a prudent fiduciary. ECF No. 57 at 13.

12

recordkeeping fees of $35 per participant for services by those recordkeepers.[5] *Id.* Such allegations support a plausible inference that the process by which the Committee hired the recordkeepers was flawed.

In addition, courts in this circuit have denied motions to dismiss where the complaint alleges that the plan fiduciary had notable bargaining power by virtue of the plan's size but failed to employ such bargaining power as leverage to attempt to obtain a lower recordkeeping fee. *See Omnicom*, 2021 WL 3292487, at *15 ("Courts have denied motions to dismiss ERISA excessive fee claims where [the plaintiffs] allege that [the defendants] overpaid management fees, [and] the [p]lan failed to use its size and presumed negotiating power to reduce costs." (citations and internal quotation marks omitted)); *Garthwait*, 2021 WL 4441939, at *8–9 (denying motion to dismiss where the plaintiffs alleged that, "[d]espite the [p]lan's clout, its fees were $10 higher than [the] industry averages for smaller plans with less negotiating power," and noting that courts have generally denied motions to dismiss excessive recordkeeping fee claims predicated on allegations "that fiduciaries failed to negotiate for or seek lower fees"); *Vellali*, 308 F. Supp. 3d at 684 (noting plaintiffs' allegations that defendants breached their duty of prudence by, among other things, failing to leverage the plan's "'jumbo' size to negotiate for cheaper recordkeeping fees").

---

[5] Defendants contend that Plaintiffs' comparators are not appropriate to plausibly satisfy the "benchmark" pleading requirement because "a cursory review of these six so-called 'similar' plans shows that they are not comparable." *See Ferguson*, 2019 WL 4466714, at *8 (granting motion to dismiss where the plaintiffs failed to allege a "benchmark" by which the court could "compare the [p]lan's record keeping service to an alternative a prudent fiduciary would have selected"). Specifically, Defendants contend that the comparators were not of similar size as alleged, and those plans' assets increased during the relevant time frame whereas the assets in Xerox's Plan decreased during that same time frame. However, this factual dispute is not properly resolved on a motion to dismiss because the Court must accept Plaintiffs' allegations as true. *Cohen*, 711 F.3d at 359. Indeed, other courts in this circuit have rejected a defendant's efforts to inject a similar factual dispute into a motion to dismiss. *See Cunningham v. Cornell Univ.*, No. 16-cv-6525 (PKC), 2017 WL 4358769, at *7 (S.D.N.Y. Sept. 29, 2017) (reasoning that the "defendants' argument that [the] plaintiffs used inappropriate benchmarks to assess the [challenged decisions] raises factual questions that are not properly addressed on a motion to dismiss"); *Omnicom*, 2021 WL 3292487, at *15 (noting that the question of "[w]hether [the defendant] actually would have been able to secure [the rate listed as the average in an industry publication of averages] is a matter reserved for later," i.e., not on a motion to dismiss).

Here, Plaintiffs allege that the Plan fiduciaries "had significant leverage to negotiate competitive rates" for recordkeeping services due to the Plan's large size, but did not engage in prudent negotiation for competitive rates. Compl. ¶¶ 40, 46. These allegations further support a plausible inference that the process by which the Committee hired the recordkeepers was flawed.

Defendants maintain that Plaintiffs' claim for breach of the duty of prudence must fail because Plaintiffs allege virtually nothing about the services provided by the two recordkeepers at issue. Defendants rely on *Young* for the proposition that Plaintiffs must "allege that the fees were excessive *relative to the services rendered*." *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (summary order) (emphasis added).

Various district courts have agreed with Defendants that *Young* requires an ERISA plaintiff to allege that a defined contribution plan's recordkeeper fees were "so disproportionately large that [the fee] bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining[.]" *Id.* at 33 (internal quotation marks omitted) (quoting *Gartenberg v. Merrill Lynch Asset Mgmt.*, 694 F.2d 923, 928 (2d Cir. 1989). *See Sandoval*, 2020 WL 9259108, at *7 (citing *Young*); *Brown v. Daikin Am., Inc.*, No. 18-cv-11091 (PAC), 2021 WL 1758898, at *8 (S.D.N.Y. May 4, 2021) (citing *Young* and *Gartenberg*); *Ferguson*, 2019 WL 4466714, at *8 (citing *Young*).

Upon closer inspection, however, this Court is not convinced that *Young* controls Plaintiffs' claim. In that unpublished decision, the Second Circuit affirmed a district court's dismissal of an ERISA claim in which the plan participants alleged that plan fiduciaries breached their duty to diversify the plan investments because they offered only undiversified single-equity funds, resulting in excessive fees and expenses. *Young*, 325 F. App'x at 32. Noting that there was little guidance in the ERISA context for considering an excessive fee claim at that time, the court

14

analogized a case that considered a claim for excessive mutual fund fees pursuant to the Investment Company Act ("ICA"). *Id.* at 33. The Second Circuit did not meaningfully analyze, though, whether the ICA was similar enough to ERISA to warrant such analogy. *See id.* at 33 (analysis limited to a statement that "[w]e consider the standard for excessive fee claims articulated in the context of [the ICA] useful for reviewing plaintiffs' claim that excessive fees violated ERISA").

Subsequent to *Young*, the U.S. Supreme Court expounded on the purposes of the ICA, which reveals that it has aims distinct from ERISA. ERISA is designed to "protect beneficiaries of employee benefit plans" against imprudence and disloyalty by defined contribution benefit plan administrators, who, despite occupying a role akin to a trustee, are often affiliated with the employer sponsoring the plan. *Morgan Stanley*, 712 F.3d at 715. The ICA, on the other hand, aims to protect mutual fund shareholders against conflicts of interest between the fund and its investment advisor by injecting fiduciary duties into that relationship. *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 340 (2010) (discussing the history of the ICA and its amendments). In resolving a circuit split interpreting the substance of the ICA's fiduciary duties, the Court reasoned that the ICA imported a modified fiduciary duty standard from the law of trusts and concluded that an investment advisor breaches that duty by charging "a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arms-length bargaining." *Id.* at 346–47.

A court in this district relied on *Jones* to conclude that *Young* did not dictate the requirements that ERISA plaintiffs had to meet to survive a motion to dismiss on their excessive fee claim. *Vellali*, 308 F. Supp. 3d at 684 n.2. Specifically, the court reasoned that the Court in *Jones* confirmed that the fiduciary duties imposed by the ICA "are tailored to the history, statutory scheme, and purposes of the ICA, which regulates investment advisers." *Id.* Accordingly, because

the fiduciary duties owed in the ERISA context stem from a different statutory scheme with a different purpose, the *Vellali* court declined to require the plaintiffs in an ERISA action to specifically allege that the fees were excessive relative to the services rendered, given the adequacy of the plaintiffs' other allegations.  *Id.* (also noting that *Young* "never explicitly adopts the ICA standard" and, "[a]t most . . . notes that the ICA standard is 'useful' for reviewing excessive-fees claims in the context of ERISA").  Another court in this circuit reasoned similarly.  *In re M&T Bank Corp. ERISA Litig.*, No. 16-CV-375 FPG, 2018 WL 4334807, at *8 n.10 (W.D.N.Y. Sept. 11, 2018).  That court explained that "*Young* extrapolated this standard from the [ICA] and applied it to ERISA, but . . . the Supreme Court [in *Jones*] confirmed that the ICA's 'excessive relative to the services rendered' standard is 'tailored to the history, statutory scheme, and purposes of the ICA' . . . and not ERISA fiduciaries."  *Id.* (quoting *Vellali*, 308 F. Supp. 3d at 684 n.2).

This Court agrees with the reasoning of *Vellali* and *M&T Bank Corp.*  Given the ICA's distinct history and purpose, reflected in the U.S. Supreme Court's interpretation of its fiduciary duties, *Young*'s analogy of the ICA to ERISA does not govern this motion.  Accordingly, the relative sparsity of Plaintiffs' allegations concerning the specific services rendered by Xerox HR, Conduent, and the comparator recordkeepers is not fatal to their claim of excessive recordkeeping fees.  Rather, Plaintiffs' general allegations that the comparator recordkeepers would have provided services "of like or superior quality" to the affiliated recordkeepers, as well as Plaintiffs' suggestion that recordkeeping services are fairly standardized, support their claim that the fees charged by the affiliated recordkeepers were excessive.  *See* Compl. ¶¶ 33 n.8, 45.  These allegations—in addition to the more specific allegations regarding the recordkeepers' affiliation with Xerox, the dramatic increase in fees, the competitive nature of the market for recordkeepers, the specific fees charged by the comparators for similarly sized plans, and the Committee's failure

to employ what would have been considerable bargaining power to leverage a competitive fee—considered together, plausibly state a claim that a reasonable fiduciary in Defendants' position would have conducted an adequate investigation into the prudence of retaining the affiliated recordkeepers and, accordingly, would have acted differently. *See Sacerdote*, 9 F.4th at 108; *Morgan Stanley*, 712 F.3d at 720.

### B. Duty of Loyalty

Similarly, Plaintiffs have plausibly alleged that Defendants breached their duty of loyalty by retaining affiliated recordkeepers for the purpose of providing benefits to Defendants, at the expense of Plan participants. While the duties of prudence and loyalty are "conceptually distinct from one another," the "analysis of the duty of loyalty may inform the analysis of the duty of prudence and vice versa[.]" *Vellali*, 308 F. Supp. 3d at 688. *See also Donovan*, 680 F.2d at 271 (noting that ERISA imposes "overlapping standards," which require plan fiduciaries to discharge their duties loyally by employing the diligence of an objectively prudent person). Particularly in this case, the duty of loyalty hinges on the duty of prudence. Plaintiffs essentially allege that Defendants imprudently hired affiliated recordkeepers for the disloyal purpose of benefiting themselves by way of the excessive recordkeeping fees. Such allegations plausibly state a claim for breach of the duty of loyalty.

Defendants contend that Plaintiffs fail to state a claim of disloyalty for three reasons.[6] First, they maintain that Plaintiffs' allegations of self-interest are conclusory. Courts in this circuit have held that including an affiliated fund in a plan's menu of options or retaining an affiliated

---

[6] Defendants also dispute Plaintiffs' allegation that *both* Xerox HR and Conduent were affiliated with Defendant Xerox. Specifically, Defendants concede that Xerox HR was "affiliated" with Xerox because Xerox HR was a wholly-owned subsidiary of Xerox, but they maintain that Conduent was neither wholly-owned by Xerox nor otherwise affiliated with Xerox. Mem. in Supp. of Mot. to Dismiss at 15, 21. However, the Court must accept as true Plaintiffs' allegation that "Xerox retained significant equity in Conduent after the spinoff, and thus benefited financially from actions which were beneficial to Conduent." Compl. ¶ 43. Accordingly, at this stage, the Court need not address the factual dispute raised by Defendants with respect to Conduent's affiliation with Xerox.

administrative service "do not, standing alone, support an inference that a defendant breached its fiduciary duties[.]" *See Bekker v. Neuberger Berman Grp. LLC*, No. 16 CV 6123-LTS-BCM, 2018 WL 4636841, at *6 (S.D.N.Y. Sept. 27, 2018). *See also Donovan*, 680 F.2d at 271 (explaining that a plan fiduciary's action which "incidentally benefits" the plan sponsor does not violate the duty of loyalty so long as, "after careful and impartial investigation, [the plan fiduciary] reasonably conclude[s] [that the action is] best to promote the interests of participants and beneficiaries"); *Vellali*, 308 F. Supp. 3d at 688 ("[A] theory of breach based on incidental benefit, without more, cannot support a breach of loyalty claim.").

Although Defendants are correct that allegations of affiliation do not state a claim for breach of the duty of loyalty *standing alone*, "an allegation of such affiliation can be coupled with other circumstantial factual allegations to suggest plausibly that a fiduciary acted imprudently or disloyally." *Bekker*, 2018 WL 4636821, at *6. Here, Plaintiffs allege more than mere affiliation; they allege that Defendants' retention of affiliated recordkeepers was the result of an imprudent decision-making process, which plausibly suggests that such decision was the result of a disloyal motivation. They further allege that Defendants could have engaged in a benchmarking analysis or performed a request for proposal to discover that other recordkeepers would have provided the same services at significantly lower cost. Compl. ¶ 46. It is a reasonable inference that Defendants did neither and that the failure to do so for several years was spurred by a desire to keep profits flowing to themselves. In other words, Plaintiffs' plausible claim that Defendants' decision-making process was imprudent, when combined with their allegations that Defendants "stood to benefit from" the alleged imprudent and excessive fees, are enough to state a claim of disloyalty. *See Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 9936 (LGS), 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016). Considered together, such allegations rise above a suggestion of

18

merely "incidental benefit" to Xerox, particularly given ERISA's directive that plan fiduciaries must make decisions "with an eye single to the interests of the participants and beneficiaries." *Donovan*, 680 F.2d at 271.

Second, Defendants analogize this case to *Leber v. Citigroup, Inc.*, contending that Plaintiffs' allegations fail to state a claim of disloyalty. In that case, the court dismissed the plaintiffs' claims that an affiliated management service charged excessive fees. It permitted, however, the plaintiffs' claims that the plan fiduciary offered an affiliated mutual fund that charged excessive fees and performed worse than comparable unaffiliated funds. *Leber v. Citigroup, Inc.*, No. 07 Civ. 9329 (SHS), 2010 WL 935442, at *13 (S.D.N.Y. Mar. 16, 2010).

The Court is not convinced by Defendants' attempts to analogize Plaintiffs' claim to the dismissed claims in *Leber*. In *Leber*, the court found the complaint lacked allegations that the selection of an affiliated management service was "imprudent, that the services provided were deficient, that the costs associated with those services were unreasonable, or that the selection was in any other respect at odds with the best interests" of the plan. *Id.* at *14. Plaintiffs here allege, by contrast, all of the facts found lacking in *Leber*'s holding regarding an affiliated management service: that the selection of the affiliated recordkeepers was imprudent, that the costs associated with those services were unreasonable, and that the selection of the affiliated recordkeepers was at odds with the best interests of the Plan and its beneficiaries. *See* Compl. ¶¶ 42–47. The complaint here is more similar to the affiliated mutual fund claim of *Leber*, which the court there permitted to proceed, because it contains "specific factual allegations" that the affiliated recordkeepers hired by the Committee "charged higher fees than those charged by comparable" recordkeepers. Such allegations are sufficient to "nudge[] those claims across the line from merely conceivable to plausible." *Id.* at *13. Plaintiffs' allegations that Defendants hired affiliated

19

recordkeepers through an imprudent process because such imprudence would benefit Xerox at the expense of the Plan participants, state a claim that Defendants breached their duty of loyalty.[7]

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs state a claim that Defendants breached their fiduciary duties of prudence and loyalty and that Defendants Xerox and John Does 1–30 failed to monitor the Committee's administration of the Plan.  Thus, Defendants' motion to dismiss is denied.

By **May 2, 2022**, Defendants shall file their answer to the complaint.  By **May 9, 2022**, the parties shall file a joint status report indicating:

1. whether the parties have completed Phase One of discovery, as defined by the parties' Rule 26(f) Report, ECF No. 52, and as advised by the Court in its Order, ECF No. 65;

2. whether the parties request a scheduling conference to discuss the remaining discovery needs of the case;

3. how long the parties request to complete Phase Two of discovery;

4. the parties' requested deadlines for Plaintiffs' motion for class certification and any dispositive motions; and

5. the parties' interest in referral to a U.S. Magistrate Judge for a settlement conference.

The Court will enter a scheduling order after receiving this status report, and, if necessary, after a scheduling conference.

**SO ORDERED** at Hartford, Connecticut, this 18th day of April, 2022.

                                           */s/ Sarala V. Nagala*
                                           SARALA V. NAGALA
                                           UNITED STATES DISTRICT JUDGE

---

[7] Plaintiffs' failure to allege a prohibited transaction claim against Defendants does not make the breach of duty of loyalty claim implausible, as Defendant contends.