## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **Chris Carrigan, Michael Venti, and Sylvain Yelle, individually and as representatives of a class of similarly situated persons, and on behalf of the Xerox Corporation Savings Plan**<br><br>**Plaintiffs,**<br><br>v.<br><br>**Xerox Corporation, the Xerox Corporation Plan Administrator Committee, and John Does 1-30**<br><br>**Defendants.** | Civil Action No. 3:21-cv-01085-SVN<br><br><br><br><br><br><br><br><br><br>May 2, 2022 |

## DEFENDANTS' ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT

Defendants Xerox Corporation, the Xerox Corporation Plan Administrator Committee, and John Does 1-30 (collectively "Xerox"), hereby answer the allegations in the Class Action Complaint (the "Complaint," Dkt. No. 1) filed by Plaintiffs Chris Carrigan, Michael Venti, and Sylvain Yelle ("Plaintiffs"). All capitalized terms used but not defined herein have the meaning ascribed to them in the Complaint. The inclusion of headings below is only for consistency with the Complaint and are not admissions of the matters set forth in the headings. Defendants deny any allegations in any headings, subheadings, footnotes, charts, graphs, or other areas outside of the paragraphs expressly referenced herein.

## NATURE OF THE ACTION

1.      Plaintiffs Chris Carrigan, Michael Venti, and Sylvain Yelle, individually and as representatives of the Class described herein, bring this action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq*. ("ERISA"), against Defendants Xerox Corporation ("Xerox"), the Xerox Corporation Plan Administrator Committee

(the "Committee"), and John Does 1-30 (collectively, "Defendants").  As described herein, Defendants have breached their fiduciary duties with respect to the Xerox Corporation Savings Plan (the "Plan") in violation of ERISA, to the detriment of the Plan, its participants, and their beneficiaries.  Plaintiffs bring this action to remedy this unlawful conduct and obtain appropriate monetary and equitable relief as provided by ERISA.

**RESPONSE:**     Defendants admit that Plaintiffs purport to bring a putative class action under

the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, on behalf of

participants and beneficiaries in the Xerox Corporation Savings Plan (the "Plan").  Defendants

deny that they breached any fiduciary duties, deny that they violated any provision of ERISA or

any other law, deny that Plaintiffs' claims are appropriate for class treatment, and deny that

Plaintiffs, the Plan, or any putative class members are entitled to relief under ERISA, or to any

other relief whatsoever.  Defendants deny the remaining allegations of Paragraph 1.

## PRELIMINARY STATEMENT

2.      As of March 2021, Americans had approximately $9.9 trillion in assets invested in defined contribution plans, such as 401(k) and 403(b) plans.  Defined contribution plans have largely replaced defined benefit plans—or pension plans—that were predominant in previous generations.  As of March 2020, only around 11% of private sector U.S. workers in the private sector participate in a defined benefit plan.  By contrast, approximately 47% of private sector U.S. workers participate in a defined contribution plan.

**RESPONSE:**     Defendants lack sufficient information to admit or deny the allegations in

Paragraph 2, and therefore deny those allegations.

3.      The potential for disloyalty and imprudence is much greater in defined contribution plans than in defined benefit plans.  In a defined benefit plan, the participant is entitled to a fixed monthly pension payment, while the employer is responsible for making sure the plan is sufficiently capitalized, and thus the employer bears all risks related to excessive fees.  *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999).  Therefore, in a defined benefit plan, the employer and the plan's fiduciaries have every incentive to keep costs low and to remove imprudent investments.  But in a defined contribution plan, participants' benefits "are limited to the value of their own investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1826 (2015).  Thus, the employer has little or no incentive to keep costs low because all risks related to high fees are typically borne by the participating employees.

**RESPONSE:**      Paragraph 3 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants lack sufficient information to admit or deny the allegations in Paragraph 3, and therefore deny those allegations.

4.      For certain companies, the potential for imprudent and disloyal conduct is especially high because the plan's fiduciaries can benefit the company through their administration of the plan by, for example, hiring service providers affiliated with the plan sponsor that an unconflicted fiduciary would not have utilized.  That was the case with Xerox:  shortly after Xerox entered the retirement plan recordkeeping business in the early 2010s, Defendants hired Xerox as the Plan's recordkeeper, and passed Xerox's fees, which were well above reasonable market rates, onto the Plan's participants.

**RESPONSE:**      The first sentence of Paragraph 4 is a legal conclusion to which no response is required.  Defendants admit that Xerox is a sponsor of the Plan, and that an affiliate of Xerox (Xerox HR Benefit Services or "Xerox HR") provided recordkeeping services for the Plan during a portion of the putative class period.  Defendants deny the remaining allegations in Paragraph 4.

5.      To safeguard retirement plan participants, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries.  29 U.S.C. § 1104(a)(1).  These twin fiduciary duties are the "highest known to law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (1982).  Fiduciaries must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), and exercise appropriate "care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1)(B).  This includes an obligation to ensure that the expenses of administering the plan are reasonable.  See 29 U.S.C. § 1104(a)(1)(A)(ii).

**RESPONSE:**      Paragraph 5 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants admit that ERISA imposes fiduciary duties on plan fiduciaries, but deny the characterization of those duties as alleged in Paragraph 5.

6.      Contrary to these fiduciary duties, Defendants failed to prudently and loyally oversee the Plan's recordkeeping service provider, and instead used the Plan to promote Xerox's own business interests.  From the time Defendants hired Xerox's recordkeeping affiliate, Xerox HR Benefit Services ("Xerox HR"), in 2013 until the time that Defendants belatedly switched to an unaffiliated recordkeeper in 2021, the Plan's recordkeeping expenses more than doubled from $54 per participant in 2013 to $136 per participant by 2019 (the last year for which data is available), all during a period when marketplace rates for defined contribution recordkeeping services were falling dramatically.

**RESPONSE:**     Paragraph 6 asserts legal conclusions and argument to which no response is required.  To the extent a response to the allegations in Paragraph 6 is required, Defendants admit that Xerox HR provided recordkeeping services for the Plan during a portion of the putative class period.  Defendants deny the remaining allegations in Paragraph 6.

7.     Defendants' financial incentive to use the affiliated recordkeeper grew even stronger after Xerox HR was spun off into an independent entity, Conduent HR Services ("Conduent"), as Xerox and its shareholders acquired a material ownership stake in Conduent as part of the spinoff.  Despite receiving ample notice of the spinoff and opportunity to find another recordkeeper or negotiate a favorable deal with the new entity, Defendants retained Conduent as the Plan's recordkeeper for nearly five years after the spinoff despite the Plan's recordkeeping expenses almost doubling immediately after the spinoff was finalized.  By retaining the services of an affiliated recordkeeper and failing to engage in a prudent investigation of other service providers in the marketplace, Defendants allowed the Plan to pay as much as ***four times*** more than what the Plan would have paid in the open market for recordkeeping services of comparable or superior quality.  As a result, participants paid millions of dollars per year in excessive fees from 2015 through 2021.

**RESPONSE:**     Paragraph 7 asserts legal conclusions and argument to which no response is required.  Defendants admit that Xerox HR and Conduent each provided recordkeeping services for the Plan during different portions of the putative class period.  Defendants deny the remaining allegations in Paragraph 7.

8.     Based on the conduct described herein, Plaintiffs assert claims against Defendants under ERISA for breaches of the fiduciary duties of loyalty and prudence (Count One), and against Xerox for failure to monitor fiduciaries (Count Two).  In connection with these claims, Plaintiffs seek to recover all losses to the Plan resulting from Defendants' fiduciary breaches and other appropriate relief.

**RESPONSE:**     Defendants admit that Plaintiffs purport to assert breach-of-fiduciary-duty claims and other claims under ERISA.  Defendants deny that they breached any fiduciary duties, deny that they violated any provision of ERISA or any other law, deny that Plaintiffs' claims are appropriate for class treatment, and deny that Plaintiffs, the Plan, or any putative class members are entitled to relief under ERISA, or to any other relief whatsoever.  Defendants deny the remaining allegations in Paragraph 8.

## JURISDICTION AND VENUE

9.     Plaintiffs bring this action pursuant to 29 U.S.C. § 1132(a)(2) and (3), which provide that participants in an employee retirement plan may pursue a civil action on behalf of the plan to remedy breaches of fiduciary duties and other prohibited conduct, and to obtain monetary and appropriate equitable relief as set forth in 29 U.S.C. § 11.

**RESPONSE:**     Defendants admit that Plaintiffs purport to bring a putative class action under

29 U.S.C. § 1132(a)(2) and (3).   The remainder of Paragraph 9 asserts legal conclusions and

argument to which no response is required.

10.     This case presents a federal question under ERISA, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

**RESPONSE:**     Paragraph 10 asserts legal conclusions and argument to which no response is

required.

11.     Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because this is the district where the Xerox Corporation Savings Plan is administered, where Defendant Xerox resides, and where a substantial part of the events or omissions giving rise to the claims occurred.

**RESPONSE:**     Paragraph 11 asserts legal conclusions and argument to which no response is

required.

## THE PARTIES

### Plaintiffs

12.     Plaintiff Christopher Carrigan resides in Fairport, New York.   Plaintiff Carrigan participated in the Xerox Corporation Savings Plan from 1999 until April 2019, when he rolled his account balance over to an IRA.   As a Plan participant, his account was recordkept by Xerox HR and Conduent during the class period.   Plaintiff Carrigan has been financially injured by Defendants' unlawful conduct which caused him to pay excessive recordkeeping fees.   His account would have been worth more when it was rolled over had Defendants not violated ERISA as described herein.

**RESPONSE:**     Defendants lack sufficient information to admit or deny the first sentence of

Paragraph 12.   Defendants admit that Plaintiff Carrigan was a participant in the Plan, and that

Xerox HR and Conduent provided recordkeeping services for the Plan during separate portions of

the putative class period.   Defendants deny the remaining allegations in Paragraph 12.

13.     Plaintiff Michael Venti resides in Star, Idaho.  Plaintiff Venti participated in the Xerox Corporation Savings Plan from 1998 until November 2020, when he rolled his account balance over to an IRA.  As a Plan participant, his account was recordkept by Xerox HR and Conduent during the class period.  Plaintiff Venti has been financially injured by Defendants' unlawful conduct which caused him to pay excessive recordkeeping fees.  His account would have been worth more when it was rolled over had Defendants not violated ERISA as described herein.

**RESPONSE:**     Defendants lack sufficient information to admit or deny the first sentence of

Paragraph 13.  Defendants admit that Plaintiff Venti was a participant in the Plan, and that Xerox

HR and Conduent provided recordkeeping services for the Plan during separate portions of the

putative class period.  Defendants deny the remaining allegations in Paragraph 13.

14.     Plaintiff Sylvain Yelle resides in Suwanee, Georgia, and has participated in the plan since 1994.  Plaintiff Yelle is a current participant in the Plan, although he ceased making contributions when his employment with Xerox ended in 1999.  Plaintiff Yelle's account balance in the Plan would be higher had Defendants not violated ERISA as described herein.

**RESPONSE:**     Defendants lack sufficient information to admit or deny the first sentence of

Paragraph 14.  Defendants admit that Plaintiff Yelle was a participant in the Plan, and that Xerox

and Conduent provided recordkeeping services for the Plan during separate portions of the putative

class period.  Defendants deny the remaining allegations in Paragraph 14.

**The Plan**

15.     The Plan was established January 1, 1945.

**RESPONSE:**     Defendants admit the allegation in Paragraph 15.

16.     The Plan covers all eligible U.S. employees and former non-union employees of the Xerox Corporation and participating subsidiaries.

**RESPONSE:**     Paragraph 16 purports to characterize the terms of a written document, which

speaks for itself, and requires no response.

17.     The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A) and a "defined contribution plan" within the meaning of 29 U.S.C. § 1002(34).  The Plan is a qualified plan under 26 U.S.C. § 401, commonly referred to as a "401(k) plan."

**RESPONSE:**     Paragraph 17 asserts legal conclusions to which no response is required.  To the

extent a response is required, Defendants admit the Plan is 401(k) "defined benefit" pension plan under 29 U.S.C. § 1002(34) and 26 U.S.C. § 401.  Defendants deny any remaining allegations in Paragraph 17.

18.     From 2015 through the end of 2019, the last year for which data is available, the Plan has had between approximately 21,000 and 30,000 participants, and between $3.6 billion and $4.3 billion in assets.

**RESPONSE:**     Defendants admit that the Plan had 30,224 participants as of December 31, 2015, and 21,741 participants as of December 31, 2019, as set forth in the Plan's 2015 and 2019 Forms 5500 filed with the United States Department of Labor.  Defendants admit that the Plan held approximately $4.18 billion in assets as of December 31, 2015, and approximately $3.81 billion in assets as of December 31, 2019, as set forth in the Plan's 2015 and 2019 Forms 5500 filed with the United States Department of Labor.

19.     The assets of the Plan are held in a master trust named the Xerox Participant Directed Pool ("Master Trust").  "[A] master trust is a trust for which a regulated financial institution serves as trustee or custodian (regardless of whether such institution exercises discretionary authority or control respecting the management of assets held in the trust) and in which assets of more than one plan sponsored by a single employer or by a group of employers under common control are held." 29 C.F.R. § 2520.103-1(e).  The Plan's assets are pooled in the Master Trust with those of the Savings Plan of the Xerox Corporation, a plan with approximately 1,600 participants and $175 million in assets that is not part of the present matter.

**RESPONSE:**     Defendants admit that the assets of the Plan are held in a master trust which also holds the assets of other Xerox retirement plans not at issue in this action.  The remainder of Paragraph 19 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 19.

20.     Participants in the Plan are responsible for paying expenses associated with administering the Plan and the Master Trust.  These fees are charged as a percentage of the employee's assets in the Plan that is added on top of the expense ratio associated with each of the Plan's investments, and thus do not show up on participants' statements as a separate fee they are being charged.

**RESPONSE:**     Defendants admit that participants in the Plan are responsible for paying certain expenses associated with their investments in and the administration of the Plan.  Defendants deny the remaining allegations in Paragraph 20.

21.     During the class period, the portion of these fees used to pay recordkeeping expenses was paid to three different entities.  From 2015 through approximately 2017, fees charged to cover the recordkeeping costs of administering the Plan were paid to Xerox HR Benefits.  From approximately 2018 through 2021, the fees associated with recordkeeping services provided to the Plan were paid to Conduent.  Finally, for the entire Subject Period, the fees charged to cover recordkeeping expenses associated with administering the Master Trust were paid to Defendant Xerox.

**RESPONSE:**     Defendants admit that Xerox HR and Conduent each received fees for recordkeeping services they provided to the Plan during different portions of the putative class period.  Defendants deny the remaining allegations in Paragraph 21.

### Defendants
### *Xerox Corporation*

22.     Xerox is a publicly traded corporation headquartered in Norwalk, Connecticut.

**RESPONSE:**     Defendants deny that Xerox is a publicly traded company, but admit that it is headquartered in Norwalk, Connecticut.

23.     Xerox is identified as the plan sponsor in the Plan's and Master Trust's Form 5500 filed with the DOL.

**RESPONSE:**     Defendants admit the allegation in Paragraph 23.

24.     Xerox, acting through its VP of Human Resources, is responsible for appointing and removing members of the Committee.  It is well-accepted that the authority to appoint, retain, and remove other fiduciaries constitutes discretionary authority or control over the management or administration of a plan or trust, and thus confers fiduciary status under 29 U.S.C. § 1002(21)(A).  *See* 29 C.F.R. § 2509.75-8 (D-4); *Liss v. Smith*, 991 F. Supp. 278, 310 (S.D.N.Y. 1998) ("It is well-established that the power to appoint plan trustees confers fiduciary status.").  Further, the responsibility for appointing and removing other fiduciaries carries with it an accompanying duty to monitor the appointed fiduciaries, and to ensure that they are complying with ERISA's fiduciary standards.  *See* 29 C.F.R. § 2509.75-8 (FR-17); *Lutz v. Kaleida Health*, 2019 WL 3556935, at *6 (W.D.N.Y. Aug. 5, 2019) ("An appointing fiduciary's duty to monitor [its] appointees is well-established.") (quoting *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 477 (S.D.N.Y. 2005)).

**RESPONSE:**      Defendants admit the first sentence of Paragraph 25.  The remaining allegations in Paragraph 24 assert legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 24.

*Xerox Corporation Plan Administrator Committee*

25.      The Xerox Corporation Plan Administrator Committee is a committee designated by the Plan Document to assist Xerox with administration of the Plan.  The Committee is responsible for the general administration of the Plan, including hiring and monitoring service providers such as the Plan's recordkeeper, subject to the ultimate oversight and discretion of Xerox and its senior management.  Members of the Committee are appointed by Xerox's Vice President of Human Resources and can be removed by the same.  In performance of its duties, the Committee exercises "authority or control respecting management or disposition" of the Plan's assets and has "discretionary authority or discretionary responsibility in the administration" of the Plan and is, therefore, a fiduciary under 29 U.S.C. § 1002(21)(A).  Further, the Committee is also a named fiduciary by virtue of its position as the designated administrator of the Plan.  See 29 C.F.R. § 2509.75-8 at D-3.

**RESPONSE:**      Defendants admit that the Committee is the Plan administrator and a named fiduciary of the Plan, that the Committee is responsible for certain administrative tasks related to the Plan, and that members of the Committee are appointed by Xerox's Vice President of Human Resources and can be removed by the same.  The fourth and fifth sentences in Paragraph 25 assert legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants admit that ERISA imposes fiduciary duties on plan fiduciaries, but deny the characterization of those duties as alleged in Paragraph 25.  Defendants deny any remaining allegations in Paragraph 25.

26.      Each of the Committee members are also fiduciaries under 29 U.S.C. § 1002(21)(A).  Because the names of the individual members of the Committee during the class period are currently unknown to Plaintiffs, they are collectively named in this Complaint as John Does 1-30.

**RESPONSE:**      The first sentence of Paragraph 26 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants admit the Committee members are fiduciaries with respect to the Plan.  As for the second sentence in

Paragraph 26, Defendants admit that Plaintiffs purport to bring claims against Committee members

as John Does 1-30.  Defendants deny any remaining allegations of Paragraph 26.

27.    Each Defendant identified above as a fiduciary of the Plan is also subject to cofiduciary liability under 29 U.S.C. § 1105(a)(1)–(3) because it participated in the other fiduciaries' breaches, enabled other fiduciaries to breach their fiduciary duties, and/or failed to remedy other fiduciaries' breaches of their duties, despite having knowledge of the breaches.

**RESPONSE:**    Paragraph 27 asserts legal conclusions and argument to which no response is

required.  To the extent a response is required, Defendants deny the allegations in Paragraph 27.

## ERISA FIDUCIARY DUTIES

28.    ERISA imposes strict fiduciary duties of loyalty and prudence upon fiduciaries of retirement plans.  29 U.S.C. § 1104(a)(1) states, in relevant part:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A)  for the exclusive purpose of

(i)  providing benefits to participants and their beneficiaries; and

(ii)  defraying reasonable expenses of administering the plan;

(B)  with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims . . . .

**RESPONSE:**    Paragraph 28 asserts legal conclusions to which no response is required.  To the

extent a response is required, Defendants admit that ERISA imposes fiduciary duties on plan

fiduciaries, but deny the characterization of those duties as alleged in Paragraph 28.

29.    These ERISA fiduciary duties are "the highest known to the law." *LaScala v. Scrufari*, 479 F.3d 213, 219 (2d Cir. 2007) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).  A fiduciary's conduct "must bear the marks of loyalty, skill, and diligence expected of an expert in the field.  It is not enough to avoid misconduct, kickback schemes, and bad-faith dealings.  The law expects more than good intentions.  A pure heart and an empty head are not enough." *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 329 (3d Cir. 2019) (quotation omitted).

**RESPONSE:**    Paragraph 29 asserts legal conclusions and argument to which no response is

required.  To the extent a response is required, Defendants admit that ERISA imposes fiduciary

duties on plan fiduciaries, but deny the characterization of those duties as alleged in Paragraph 29.

## DUTY OF LOYALTY

30.     The duty of loyalty requires fiduciaries to act with "an eye single" to the interests of plan participants. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000).  "Perhaps the most fundamental duty of a [fiduciary] is that [they] must display . . . complete loyalty to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons."  Id. at 224 (quoting G. Bogert et al., *Law of Trusts and Trustees* § 543 (rev. 2d ed. Case 3:21-cv-01085-RNC Document 1 Filed 08/11/21 Page 9 of 22 10 1980)).  "It is part of the fiduciary's obligation to give [beneficiaries] undivided loyalty, free from any conflicting personal interest."  *Board of Trustees of Aftra Retirement Fund v. JPMorgan Chase Bank, N.A.*, 806 F. Supp. 2d 662, 680 (S.D.N.Y. 2011) (quotation omitted).

**RESPONSE:**     Paragraph 30 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants admit that ERISA imposes fiduciary duties on plan fiduciaries, but deny the characterization of those duties as alleged in Paragraph 30.

## DUTY OF PRUDENCE

31.     ERISA also "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2467 (2014) (quotation omitted).  "[A] fiduciary's conduct at all times must be reasonably supported in concept and must be implemented with proper care, skill, and caution." *Sweda*, 923 F.3d at 333 (quotation omitted).  "[I]f there is indeed a 'hallmark' of fiduciary activity identified in the statute, it is prudence." *Id*.

**RESPONSE:**     Paragraph 31 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants admit that ERISA imposes fiduciary duties on plan fiduciaries, but deny the characterization of those duties as alleged in Paragraph 31.

## DUTY TO MINIMIZE COSTS

32.     At retirement, employees' benefits "are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble*, 135 S. Ct. at 1826.  "Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined contribution plan, by decreasing its immediate value, and by depriving the participant of the prospective value of funds that would have continued to grow if not taken out in fees." *Sweda*, 923 F.3d at 328 (quotation omitted).

**RESPONSE:**     Paragraph 32 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants admit that ERISA imposes fiduciary duties on plan fiduciaries, but deny the characterization of those duties as alleged in Paragraph 32.

33.     Administrative services such as recordkeeping, trustee, and custodial services are necessary for the operation of any defined contribution plan and are one of the plan's largest expenses.  To protect retirement plan participants, ERISA requires the fiduciaries of such plans to monitor administrative expenses and ensure that they are reasonable.   *See* 29 U.S.C. § 1104(a)(1)(A)(ii) ("[A] fiduciary shall discharge his duties … solely in the interest of participants … for the exclusive purpose of[] providing benefits … and *defraying reasonable expenses of administering the plan*[.]") (emphasis added); *Sweda*, 923 F.3d at 328 ("Fiduciaries must … understand and monitor plan expenses."); *accord* Restatement (Third) of Trusts § 88, cmt. A (2007) ("Implicit in a trustee's fiduciary duties is a duty to be cost conscious.").

**RESPONSE:**     Regarding the first sentence of Paragraph 33, Defendants admit that recordkeeping, trustee, and custodial services are necessary for the operation of a defined contribution plan.  The remaining sentences of Paragraph 33 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants admit that ERISA imposes fiduciary duties on plan fiduciaries, but deny the characterization of those duties as alleged in Paragraph 33.

34.     Given the significant variation in total plan costs attributable to plan size, the reasonableness of administrative expenses, including recordkeeping fees, should be determined by comparisons to other similarly sized plans.  *See* 29 U.S.C. § 1104(a)(1)(B) (requiring ERISA fiduciaries to discharge their duties in the manner "that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character"); *Tussey v. ABB, Inc.*, 2007 WL 4289694, at *6, n.5 (W.D. Mo. Dec. 3, 2007) (Plaintiffs sufficiently alleged that administrative expenses were unreasonable through comparisons to similar plans because "[a]t most, reasonable compensation should mean compensation commensurate with that paid by similar plans for similar services to unaffiliated third parties.") (quoting Nell Hennessy, *Follow the Money:  ERISA Plan Investments in Mutual Funds and Insurance*, 38 J. Marshall L. Rev. 867, 877 (2005)).

**RESPONSE:**     Paragraph 34 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 34.

35.     A fiduciary may breach its fiduciary duty by authorizing higher-than-market recordkeeping fees or by maintaining a recordkeeping deal for its own benefit or that of a related party.  *See Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014) (affirming judgment against plan sponsor based on "overpaying" recordkeeper and benefiting from the overpayment*); George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 799 (7th Cir. 2011) (failure to solicit bids, and higher than- market recordkeeping fees, supported triable fiduciary breach claim*); Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 685 (D. Conn. 2018) (allegations that "the cost of recordkeeping . . . swelled out of proportion to the actual recordkeeping services" due to deficiencies in "monitoring,

soliciting competitive bids, negotiating, and selecting a reasonably priced recordkeeper" constitute "quintessential imprudence claims" sufficient to state a fiduciary breach claim).

**RESPONSE:** Paragraph 35 asserts legal conclusions and argument to which no response is

required. To the extent a response is required, Defendants deny the allegations in Paragraph 35.

## DEFENDANTS' VIOLATIONS OF ERISA

### I. DEFENDANTS FAILED TO PROPERLY MONITOR OR CONTROL THE PLAN'S RECORDKEEPING EXPENSES.

36. Defendants caused the Plan's participants to pay excessive recordkeeping expenses during the class period.

**RESPONSE:** Defendants deny the allegations in Paragraph 36.

37. Among larger plans, the market for recordkeeping services is highly competitive, with many recordkeepers equally capable of providing a high-level service. Accordingly, recordkeepers vigorously compete for business by offering the best price. As a result of such competition, recordkeeping fees have declined in defined contribution plans over time. Between 2006 and 2016, recordkeeping costs dropped by approximately 50% on a per-participant basis and have continued to decline since then.

**RESPONSE:** Defendants deny the allegations in Paragraph 36.

38. Typically, recordkeepers charge for recordkeeping services either on a per participant fee basis (a fee based on the number of participants in the plan) or as an asset-based fee (a fee based on a percentage of the total assets in the plan). Regardless of how these fees are charged, the cost of these services is typically borne by the plan participants. Accordingly, it is important for plan fiduciaries to closely monitor these expenses to ensure that participants are not being overcharged. See DOL Advisory Op. 2013-03A, 2013 WL 3546834, at 4 (July 3, 2013) (noting that fiduciaries must obtain information regarding "all fees or compensation received by" a recordkeeper – "including any revenue sharing" – and assess whether that amount is reasonable for the services provided).

**RESPONSE:** Regarding the first and second sentences in Paragraph 38, Defendants lack

sufficient information to admit or deny the allegations in Paragraph 38, and therefore deny those

allegations. The third sentence of Paragraph 38 asserts legal conclusions and argument to which

no response is required. To the extent a response is required, Defendants admit that ERISA

imposes fiduciary duties on plan fiduciaries, but deny the characterization of those duties as alleged

in Paragraph 38.

39.     The cost of providing recordkeeping services depends on the number of participants in a plan.  Plans with large numbers of participants are highly sought after within the recordkeeping marketplace and are also able to achieve lower costs on a per-participant basis by taking advantage of economies of scale.  However, to achieve these savings, large plans must prudently negotiate lower per-participant recordkeeping fees.

**RESPONSE:**     Defendants deny the allegations in Paragraph 39.

40.     As noted above, the Plan has had between 21,000 and 31,000 participants, and between $3.6 billion and $4.4 billion in assets during the class period.  Accordingly, the Plan at all times had significant leverage to negotiate competitive rates for high quality recordkeeping services.

**RESPONSE:**     Defendants admit that the Plan had 30,224 participants as of December 31, 2015, and 21,741 participants as of December 31, 2019, as set forth in the Plan's 2015 and 2019 Forms 5500 filed with the United States Department of Labor.  Defendants admit that the Plan held approximately $4.18 billion in assets as of December 31, 2015, and approximately $3.81 billion in assets as of December 31, 2019, as set forth in the Plan's 2015 and 2019 Forms 5500 filed with the United States Department of Labor.  Defendants deny any remaining allegations in Paragraph 40.

41.     Defendants caused the Plan to purchase recordkeeping services from Xerox HR beginning January 1, 2013.  Xerox HR was subsequently spun off into Conduent Human Resource Services ("Conduent") in 2017.  Conduent served as the Plan's recordkeeper from the time of the spinoff in 2017 until 2021.

**RESPONSE:**     Defendants admit that Xerox HR and Conduent each provided recordkeeping services for the Plan during different portions of the putative class period.  Defendants deny the remaining allegations in Paragraph 41.

42.     Xerox HR was a wholly-owned subsidiary of Xerox and, before it was spun off into Conduent, all of its profits from its retirement plan recordkeeping business immediately accrued to Xerox.  Using Xerox HR as the Plan's recordkeeper therefore provided a direct financial benefit to Xerox.

**RESPONSE:**     Defendants admit that Xerox HR was an affiliate of Xerox.  Defendants deny the remaining allegations in Paragraph 42.

43.     Retaining Conduent as the Plan's recordkeeper after Xerox HR was spun off was also financially beneficial to Xerox.  Xerox retained significant equity in Conduent after the spinoff, and thus benefited financially from actions which were beneficial to Conduent. Additionally, Conduent had fewer than 100 defined contribution plan clients as of the time of the spinoff, so the Plan's recordkeeping contract represented a material relationship for Conduent's recordkeeping business.

**RESPONSE:**       Defendants deny the allegations in Paragraph 43.

44.     Based on the Plan's filings with the DOL, the recordkeeping fees for the Plan and Master Trust were approximately $54 per participant in 2013; $66 per participant in 2014; $70 per participant in 2015; $69 per participant in 2016; $123 per participant in 2017; $118 per participant in 2018; and $136 per participant in 2019, the last year for which data is currently available.

**RESPONSE:**       Defendants deny the allegations in Paragraph 44.

45.     Based on Plaintiffs' investigation, from 2015 to the present, a prudent and loyal fiduciary of a similarly sized plan (in terms of participant count) could have obtained comparable recordkeeping services of like or superior quality for $30 to $35 per participant (or possibly lower) from recordkeepers such as Fidelity, Vanguard, Alight, and Empower.  Numerous plans of similar size (in terms of participant count)—including those sponsored by Bechtel, WPP Group USA, Kinder Morgan, Nike, Caterpillar, and Henry Ford Health System—paid recordkeeping fees of $35 per participant or less in every year between 2015 and 2019, the last year for which data is available.

**RESPONSE:**       Defendants deny the allegations in Paragraph 45.

46.     A prudent and loyal fiduciary would have closely monitored the Plan's recordkeeping expenses and engaged in a rigorous benchmarking analysis, either on its own or by working with an independent consultant and would have discovered that the Plan was paying far too much for recordkeeping.  Alternatively, the Plan could have performed a request for proposal ("RFP") and discovered that other recordkeepers would have provided the same services at significantly lower cost.

**RESPONSE:**       Paragraph 46 asserts legal conclusions and argument to which no response is

required.  To the extent a response is required, Defendants deny the allegations in Paragraph 46.

47.     The Plan's excessive recordkeeping expenses demonstrate that Defendants failed to engage in prudent monitoring of the Plan's recordkeeping expenses and engage in prudent practices to keep recordkeeping expenses at competitive levels, and/or that Defendants permitted participants to pay excessive recordkeeping expenses because it was in Xerox's financial interest. Either way, the process by which Defendants managed the Plan's recordkeeping services "would have been tainted by failure of effort, competence, or loyalty," each of which constitutes a "breach of fiduciary duty."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009). Defendants' failure to monitor or control the Plan's recordkeeping expenses cost the Plan's participants millions of dollars during the class period.

**RESPONSE:**     Defendants deny the allegations in Paragraph 47.

## II.     PLAINTIFFS LACKED KNOWLEDGE OF DEFENDANTS' CONDUCT AND OTHER MATERIAL FACTS.

48.     Plaintiffs did not have knowledge of all material facts (including, among other things, the cost of the Plan's recordkeeping services compared to similarly-sized plans and the Plan's leverage to negotiate lower recordkeeping expenses) necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA, until shortly before this suit was filed. Further, Plaintiffs did not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan (including Defendants' process for selecting and monitoring the Plan's recordkeeper and monitoring the Plan's recordkeeping expenses) because this information is solely within the possession of Defendants prior to discovery. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth above.

**RESPONSE:**     Defendants lack sufficient information to admit or deny the extent of Plaintiff's

actual knowledge regarding the Plan's recordkeeping fees or "the specifics of Defendants'

decision-making process with respect to the Plan…." and therefore deny the allegations.

Defendants deny that there were any breaches of fiduciary duty or unlawful conduct. Defendants

deny any remaining allegations in Paragraph 48.

### CLASS ACTION ALLEGATIONS

49.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to obtain for the Plan the remedies provided by 29 U.S.C. § 1109(a). Plaintiffs seek certification of this action as a class action pursuant to this statutory provision and Fed. R. Civ. P. 23.

**RESPONSE:**     Paragraph 49 asserts legal conclusions and argument to which no response is

required. To the extent an answer is required, Defendants deny that they breached any fiduciary

duties, deny that they violated any provision of ERISA or any other law, and deny that class

treatment is appropriate.

50.     Plaintiffs assert their claims on behalf of a class of participants and beneficiaries of the Plan defined as follows: All participants and beneficiaries of the Xerox Corporation Savings Plan ("Plan") at any time from August 11, 2015, until the date that Plan's current recordkeeper took over the recordkeeping function in 2021, excluding any persons with responsibility for the Plan's administrative functions or expenses.

**RESPONSE:**      Defendants admit that Plaintiff purports to sue on behalf of the class defined in

Paragraph 50; but deny that class treatment is appropriate.   Defendants deny the remaining

allegations in Paragraph 50.

51.     Numerosity:  The Class is so numerous that joinder of all Class members is impracticable.  The Plan had approximately 21,000 to 31,000 participants at all relevant times during the applicable period.

**RESPONSE:**      Defendants admit that the Plan had 30,224 participants as of December 31,

2015, and 21,741 participants as of December 31, 2019, as set forth in the Plan's 2015 and 2019

Forms 5500 filed with the United States Department of Labor.   The remaining allegations in

Paragraph 51 assert legal conclusions and argument to which no response is required.   To the

extent a response in required, Defendants deny that class treatment is appropriate.

52.     Typicality:  Plaintiffs' claims are typical of the Class members' claims.  Like other Class members, Plaintiffs are participants of the Plan and have suffered injuries as a result of Defendants' mismanagement of the Plan.  Defendants treated Plaintiffs consistently with other Class members with respect to the Plan.  Defendants' unlawful actions, omissions, and decisions affected all of the Plan's participants similarly.

**RESPONSE:**      Paragraph 52 asserts legal conclusions and argument to which no response is

required.  To the extent a response in required, Defendants deny that class treatment is appropriate.

53.     Adequacy:  Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent, and Plaintiffs have retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impede their ability to represent such Class members.

**RESPONSE:**      Paragraph 53 asserts legal conclusions and argument to which no response is

required.  To the extent a response in required, Defendants deny that class treatment is appropriate.

54.     Commonality:  Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

      a.  Whether Defendants are fiduciaries with respect to the Plan;

      b.  Whether Defendants breached their fiduciary duties by engaging in the conduct described herein;

c.  The proper form of equitable and injunctive relief; and

d.  The proper measure of monetary relief.

**RESPONSE:**      Paragraph 54 asserts legal conclusions and argument to which no response is

required.  To the extent a response in required, Defendants deny that class treatment is appropriate.

55.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

**RESPONSE:**      Paragraph 55 asserts legal conclusions and argument to which no response is

required.  To the extent a response in required, Defendants deny that class treatment is appropriate.

56.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

**RESPONSE:**      Paragraph 56 asserts legal conclusions and argument to which no response is

required.  To the extent a response in required, Defendants deny that class treatment is appropriate.

57.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.   Defendants' conduct as described in this Complaint applied uniformly to all members of the Class.  Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendants by any Class members on an individual basis.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices.   Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single proceeding in a single forum.

**RESPONSE:**      Paragraph 57 asserts legal conclusions and argument to which no response is

required.  To the extent a response in required, Defendants deny that class treatment is appropriate.

## COUNT I

### Breach of Duties of Loyalty and Prudence

### 29 U.S.C. § 1104(a)(1)(A)–(B) (against all Defendants)

58.     As alleged above, Defendants are fiduciaries with respect to the Plan and are subject to ERISA's fiduciary duties.

**RESPONSE:**     Paragraph 58 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants admit that they were fiduciaries with respect to the Plan.

59.     29 U.S.C. § 1104 imposes fiduciary duties of loyalty and prudence upon Defendants in connection with their administration of the Plan and the selection and monitoring of the Plan's recordkeeper.  The scope of these fiduciary duties and responsibilities includes managing the assets of the Plan for the sole and exclusive benefit of the Plan's participants and beneficiaries, defraying reasonable expenses of administering the Plan, and acting with appropriate care, skill, diligence, and prudence.  *See* 29 U.S.C. § 1104.

**RESPONSE:**     Paragraph 59 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants admit that ERISA imposes fiduciary duties on plan fiduciaries, but deny the characterization of those duties as alleged in Paragraph 59.

60.     Defendants breached these fiduciary duties by engaging in the conduct described herein.  Among other things, Defendants caused the Plan to pay excessive recordkeeping fees and failed to properly monitor and control recordkeeping expenses, retaining proprietary recordkeepers because doing so was in Xerox's financial interest.  Each of the actions and omissions described above and elsewhere in this Complaint demonstrate that Defendants failed to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries of the Plan, and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of their fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

**RESPONSE:**     Paragraph 60 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 60, and deny that they breached any fiduciary duties, deny that they violated any provision of ERISA or any other law, and deny that Plaintiff, the Plan, or any putative class members are entitled to relief under ERISA or any other relief whatsoever.

61.     Further, each of the actions and omissions described in paragraph 60 above and elsewhere in this Complaint demonstrate that Defendants failed to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, in violation of their fiduciary duty of prudence under 29 U.S.C. § 1104(a)(1)(B).

**RESPONSE:**     Paragraph 61 asserts legal conclusions and argument to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 61, and deny that they breached any fiduciary duties, deny that they violated any provision of ERISA or any other law, and deny that Plaintiff, the Plan, or any putative class members are entitled to relief under ERISA or any other relief whatsoever.

62.     As a consequence of Defendants' fiduciary breaches, the Plan and the participants in the Plan suffered millions of dollars in losses due to excessive recordkeeping fees.

**RESPONSE:**     Paragraph 62 asserts legal conclusions and argument to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 62, and deny that they breached any fiduciary duties, deny that they violated any provision of ERISA or any other law, and deny that Plaintiff, the Plan, or any putative class members are entitled to relief under ERISA or any other relief whatsoever.

63.     Defendants are liable, under 29 U.S.C. §§ 1109 and 1132, to make good to the Plan all losses resulting from Defendants' fiduciary breaches. In addition, Defendants are liable for additional relief as provided by ERISA and applicable law.

**RESPONSE:**     Paragraph 63 asserts legal conclusions and argument to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 63, and deny that they breached any fiduciary duties, deny that they violated any provision of ERISA or any other law, and deny that Plaintiff, the Plan, or any putative class members are entitled to relief under ERISA or any other relief whatsoever.

## COUNT II

### Failure to Monitor Fiduciaries (against Xerox and John Does 1–30)

64.     As alleged throughout the Complaint, Xerox is a fiduciary of the Plan pursuant to 29 U.S.C. § 1002(21).

**RESPONSE:**     Paragraph 64 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants admit that Xerox is a fiduciary with respect to the Plan.

65.     Xerox, acting through its VP of Human Resources, is responsible for appointing and removing the Committee members.

**RESPONSE:**     Defendants admit the allegations in Paragraph 65.

66.     Given Xerox's fiduciary duty to appoint and remove members of the Committee, Xerox had a fiduciary responsibility to monitor the performance of the Committee.

**RESPONSE:**     Paragraph 66 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants admit that ERISA imposes fiduciary duties on plan fiduciaries, but deny the characterization of those duties as alleged in Paragraph 66.

67.     A monitoring fiduciary must ensure that the monitored fiduciaries are adequately performing their fiduciary obligations, including those with respect to the selection and oversight of service providers to the Plan, and must take prompt and effective action to protect the plan and participants when the monitored fiduciaries are not meeting their fiduciary obligations.

**RESPONSE:**     Paragraph 67 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants admit that ERISA imposes fiduciary duties on plan fiduciaries, but deny the characterization of those duties as alleged in Paragraph 67.

68.     Xerox breached its fiduciary monitoring duties by, among other things:

   a.   Failing to monitor and evaluate the performance of its appointees or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result of its appointees' imprudent and disloyal actions and omissions with respect to the Plan;

   b.   Failing to monitor its appointees' fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein; and

    c.  Failing to remove appointees whose performance was inadequate in that they continued to allow the Plan to pay excessive costs for recordkeeping services, to the detriment of the Plan and the retirement savings of the Plan's participants.

**RESPONSE:**    Paragraph 68 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 68, and deny that they breached any fiduciary duties, deny that they violated any provision of ERISA or any other law, and deny that Plaintiffs, the Plan, or any putative class members are entitled to relief under ERISA or any other relief whatsoever.

69.    As a consequence of the foregoing breaches of the duty to monitor, the Plan suffered millions of dollars of losses due to excessive fees.

**RESPONSE:**    Paragraph 69 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 69, and deny that they breached any fiduciary duties, deny that they violated any provision of ERISA or any other law, and deny that Plaintiffs, the Plan, or any putative class members are entitled to relief under ERISA or any other relief whatsoever.

70.    Pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), Xerox is liable to restore to the Plan all losses suffered as a result of its failure to properly monitor the Plan's fiduciaries, and subsequent failure to take prompt and effective action to rectify the fiduciary breaches described herein.

**RESPONSE:**    Paragraph 70 asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 70, and deny that they breached any fiduciary duties, deny that they violated any provision of ERISA or any other law, and deny that Plaintiffs, the Plan, or any putative class members are entitled to relief under ERISA or any other relief whatsoever.

## **PRAYER FOR RELIEF**

Defendants deny the allegations set forth in the WHEREFORE clause of the Complaint (inclusive of sub-parts (a) through (j)), and further deny that Plaintiffs are entitled to any of the

relief defended therein or to any other type of remedy, relief, or damages whatsoever, on behalf of themselves, any other person(s), or the Plan.

## GENERAL DENIAL

Defendants deny each and every allegation contained in the Complaint which is not specifically admitted herein.

## DEFENSES AND AFFIRMATIVE DEFENSES

Without assuming the burden of proof on any matters that would otherwise rest with Plaintiffs, and expressly denying any and all wrongdoing, Defendants allege the following defenses to the Complaint:

### FIRST DEFENSE

One or more of the Defendants are not, or were not acting as, fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1102(21)(A), with respect to certain conduct alleged by Plaintiffs.

### SECOND DEFENSE

The claims of Plaintiffs and the members of the putative class against Defendants are barred in whole or in part by the applicable statutes of repose or limitations, including but not limited to ERISA § 413, 29 U.S.C. § 1113.

### THIRD DEFENSE

The claims of Plaintiffs and/or other members of the putative class are barred, in whole or in part, by their lack of standing.

### FOURTH DEFENSE

Defendants are relieved of any alleged liability based on the Plan's participants' exercise of control over their individual accounts pursuant to ERISA § 404(c), 29 U.S.C. § 1104(c), and/or because neither the Plaintiffs, the Plan, nor anyone else suffered a loss as a result of the actions or

inactions of Defendants under ERISA § 404(c).

## FIFTH DEFENSE

Any losses alleged by Plaintiffs were not caused by any alleged breach of fiduciary duty by Defendants, as set forth in ERISA § 409(a), 29 U.S.C. § 1109(a) and elsewhere, but resulted from economic causes and events not related to any alleged breaches of fiduciary duty and from matters over which Defendants had no control.

## SIXTH DEFENSE

The fees associated with the Plan were reasonable and properly disclosed.

## SEVENTH DEFENSE

A hypothetical prudent fiduciary would have negotiated similar recordkeeping fees.

## EIGHTH DEFENSE

Plaintiffs are not entitled to certification of this action as a class action because they cannot satisfy the requirements of Federal Rule of Civil Procedure 23(a) or 23(b).

## NINTH DEFENSE

The claims of Plaintiffs and/or any other members of the putative class who have executed a waiver or release of claims against Defendants may be barred by that waiver or release of claims.

## TENTH DEFENSE

Any losses alleged by Plaintiffs were not caused by any fault, act, or omission by Defendants, as set forth in ERISA § 409(a), 29 U.S.C. § 1109(a), and elsewhere, but were caused by circumstances, entities, or persons, including Plaintiffs, for which Defendants are not responsible and cannot be held liable.

## ELEVENTH DEFENSE

To the extent Plaintiffs have stated a claim on which relief can be granted, Plaintiffs have

proximately caused, contributed to, or failed to mitigate any and all losses claimed by them.

## **TWELFTH DEFENSE**

Plaintiffs and the members of the putative class suffered no losses insofar as they paid no more than reasonable recordkeeping fees.

## **THIRTEENTH DEFENSE**

Defendants presently have insufficient knowledge or information to form a belief as to whether there are additional defenses or affirmative defenses than those stated above and have not knowingly or intentionally waived any applicable defenses or affirmative defenses.  Defendants explicitly reserve the right to assert, and hereby give notice that they intend to rely upon, any other defense that may become available or appear during discovery proceedings or otherwise in this case and hereby reserve the right to amend their Answer to assert any such defense.

\*      \*      \*

WHEREFORE, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice, enter judgment in favor of Defendants, and award Defendants their costs, including reasonable attorneys' fees and such other relief as this Court may deem just and appropriate.

Dated:  May 2, 2022

Respectfully submitted,

**XEROX CORPORATION, ET AL.**

By its attorneys,

**MORGAN, LEWIS & BOCKIUS, LLP**

/s/ Michael C. D'Agostino
Michael C. D'Agostino (ct17294)
One State St., 22nd Fl.
Hartford, CT 06103
Tel:  (860) 240-2700
Fax:  (860) 240-2701
michael.dagostino@morganlewis.com

Melissa Hill (admitted *pro hac vice*)
101 Park Ave.
New York, NY 10178
Tel:  (212) 309-6000
Fax:  (212) 309-6001
melissa.hill@morganlewis.com

Jeremy P. Blumenfeld (admitted *pro hac vice*)
Jared R. Killeen (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA  19103-2921
Tel:  (215) 963-5917
Fax:  (215) 963-5001
jeremy.blumenfeld@morganlewis.com
jared.killeen@morganlewis.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May 2022, a copy of the foregoing was filed electronically and served upon all counsel of record via operation of the Court's CM/ECF System or by mail upon anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Michael C. D'Agostino*
Michael C. D'Agostino