**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Chris Carrigan, Michael Venti, and Sylvain Yelle, individually and as representatives of a class of similarly situated persons, and on behalf of the Xerox Corporation Savings Plan | Civil Action No. 3:21-cv-01085-SVN |
| **Plaintiffs,**<br><br>v.<br><br>Xerox Corporation, the Xerox Corporation Plan Administrator Committee, and John Does 1-30 | **Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement** |
| **Defendants.** | January 22, 2024 |

i

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

BACKGROUND ...........................................................................................................................1

I.     PROCEDURAL HISTORY ...............................................................................................1

     A.     The Pleadings and Motion to Dismiss ...............................................................1

     B.     Discovery, Mediation, and Settlement ..............................................................2

     C.     Preliminary Approval of the Settlement ............................................................3

II.     OVERVIEW OF SETTLEMENT TERMS ...........................................................................3

     A.     Settlement Class.................................................................................................3

     B.     Monetary Relief .................................................................................................4

     C.     Prospective Relief .............................................................................................5

     D.     Release of Claims .............................................................................................5

     E.     Class Notice and Reaction to the Settlement ....................................................6

     F.     Review and Approval by Independent Fiduciary................................................8

ARGUMENT ………...................................................................................................................9

I.     STANDARD OF REVIEW................................................................................................9

II.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .................................10

     A.     The Class Representatives and Class Counsel Have Adequately Represented the Class....................................................................................................................10

     B.     Class Counsel and Defense Counsel Negotiated this Settlement at Arm's Length ...........................................................................................................................11

     C.     The Settlement Provides Significant Relief to the Class .......................................13

          1.     The Settlement Provides Significant Relief to the Class ...........................13

          2.     Continued Litigation Would Have Entailed Significant Costs and Risk ...14

          3.     The Proposed Method of Distributing Relief to the Class is Effective......16

          4.     The Settlement Imposes a Reasonable Limitation on Attorneys' Fees......17

          5.     No Separate Agreements Bear on the Adequacy of Relief to the Class.....17

     D.     The Positive Response from the Independent Fiduciary Supports the  Settlement ...........................................................................................................................17

      E.      The Overwhelming Majority of Class Members Support the Settlement..............17

III.    THE CLASS NOTICE PROGRAM WAS REASONABLE AND EFFECTIVE ....................................20

IV.    THE COURT SHOULD REAFFIRM CERTIFICATION OF THE SETTLEMENT CLASS ...................22

CONCLUSION...................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abbott v. Lockheed Martin Corp.*,
No. 06-cv-701-MJR-DGW, 2015 WL 4398475 (S.D. Ill. July 17, 2015).........................15

*Andrus v. New York Life Ins. Co.*,
No. 1:16-cv-05698, ECF No. 66-1 (S.D.N.Y. Feb. 14, 2017) ...........................................16

*Brotherston v. Putnam Invs., LLC*,
907 F.3d 17 (1st Cir. 2018) ...............................................................................................11

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...................................................................................9, 17, 19

*Fleisher v. Phoenix Life Ins. Co.*,
No. 11-CV-8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)......................................21

*Hyland v. Navient Corp.*,
48 F.4th 110 (2d Cir. 2022) ...............................................................................................20

*In re Excess Value Ins. Coverage Litig.*,
2004 WL 1724980 (S.D.N.Y. July 30, 2004).....................................................................11

*In re Facebook, Inc., IPO Sec. and Deriv. Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ...............................................................................21

*In re Frontier Commc'ns Corp.*,
2022 WL 4080324 (D. Conn. May 20, 2022) ....................................................................18

*In re Global Crossing Secs. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................11

*In re GSE Bonds Antitrust Litig.*,
No. 19-CV-1704, 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ...........................9, 10, 12

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009) ...............................................................................19

*In re: M&T Bank Corp. ERISA Litig.*,
No. 1:16-cv-00375, ECF No. 159-1 (Dec. 26, 2019) ........................................................16

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) .........................................................................................22

*In re PaineWebber Ltd. P'ships Litig.*,
        171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................14

*In re Patriot Nat'l, Inc. Sec. Litig.*,
        828 F. App'x 760 (2d Cir. 2020) ...................................................................18

*In re WorldCom, Inc. ERISA Litig.*,
        No. 02 Civ. 4816, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ..................14

*Karpik v. Huntington Bancshares Inc.*,
        2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ................................................11

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
        No. 15-cv-1113, 2016 WL 6542707 (D. Conn. Nov. 3, 2016)........................12

*Koerner v. Copenhaver*, No. 12-1091,
        2014 WL 5544051 (C.D. Ill. Nov. 3, 2014) .................................................15

*Krueger v. Ameriprise Fin., Inc.*,
        No. 11-CV-02781, 2015 WL 4246879 (D. Minn. July 13, 2015) ...................15

*Kruger v. Novant Health, Inc.*,
        No. 1:14CV208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ....................16

*Langford v. Devitt*,
        127 F.R.D. 41 (S.D.N.Y. 1989) .....................................................................21

*Mehling v. New York Life Ins. Co.*,
        246 F.R.D. 467 (E.D. Pa. 2007) ...............................................................16, 17

*Melito v. Experian Mktg. Sols., Inc.*,
        923 F.3d 85 (2d Cir. 2019) ............................................................................19

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
        No. 06 CIV. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009)...................14

*Moreno v. Deutsche Bank Americas Holding Corp.*,
        2017 WL 3868803 (S.D.N.Y Sept. 5, 2017) .....................................................4

*Moreno v. Deutsche Bank Americas Holding Corp.*,
        No. 1:15-cv-09936, ECF No. 321 (S.D.N.Y. Aug. 14, 2018) .........................12

*Moreno v. Deutsche Bank Americas Holding Corp.*,
        No. 1:15-cv-09936, ECF No. 322-1 (S.D.N.Y. Aug. 14, 2018)......................16

*Moreno v. Deutsche Bank Americas Holding Corp.*,
No. 1:15-cv-09936, ECF No. 335 (S.D.N.Y. Oct. 9, 2018) ................................................4

*Moreno v. Deutsche Bank Americas Holding Corp.*,
No. 1:15-cv-09936, ECF No. 348 (S.D.N.Y. Mar. 7, 2019) ............................................13

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985).........................................................................................................20

*Rozo v. Principal Life Ins. Co.*,
2021 WL 1837539 (S.D. Iowa Apr. 8, 2021) ..................................................................15

*Sacerdote v. New York Univ.*,
328 F. Supp. 3d 273 (S.D.N.Y. 2018).............................................................................15

*Simerlein v. Toyota Motor Corp.*,
No. 3:17-CV-1091 (VAB), 2019 WL 2417404 (D. Conn. June 10, 2019)......................18

*Sykes v. Harris*,
No. 09 CIV. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016)....................18, 19

*Tibble v. Edison Int'l*, CV 07-5359,
2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) ................................................................15

*Tussey v. ABB, Inc.*,
850 F.3d 951 (8th Cir. 2017) ..........................................................................................15

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
2017 WL 2655678 (C.D. Cal. June 15, 2017)...................................................................4

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
2018 WL 3000490 (C.D. Cal. Feb. 6, 2018).....................................................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ...........................................................9, 11, 18, 19, 20, 21

*Wildman v. Am. Century Servs., LLC*,
No. 4:16-CV-00737, 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) ..................................4

*Wildman v. Am. Century Servs., LLC*,
362 F. Supp. 3d 685 (W.D. Mo. 2019) ...........................................................................15

## Rules, Regulations, and Statutes

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................. 20

Fed. R. Civ. P. 23(e)(2) ................................................................................................. 9

Fed. R. Civ. P. 23(e)(2) advisory committee note (2018) ............................................ 9

Fed. R. Civ. P. 23(e)(2)(B) ......................................................................................... 11

Fed. R. Civ. P. 23(e)(2)(C) ......................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(C)(iv) ................................................................................... 17

28 U.S.C. § 1715(b) .................................................................................................... 22

68 Fed. Reg. 75632 ....................................................................................................... 8

## Secondary Authorities

4 Newberg on Class Actions § 13:54 (5th ed.) at 108) ............................................... 18

Restatement (Third) of Trusts, § 100 cmt. b(1) ......................................................... 15

## INTRODUCTION

On September 27, 2023, this Court preliminarily approved the Parties' Class Action Settlement Agreement, which resolves Plaintiffs' class action claims against Defendants Xerox Corporation, the Xerox Corporation Plan Administrator Committee, and John Does 1-30 ("Defendants") under the Employee Retirement Income Security Act ("ERISA") for their management of the Xerox Corporation Savings Plan ("Plan"). ECF No. 103. The Court found on a preliminary basis that the terms of the Settlement are "fair, reasonable, and adequate," as well as in accordance with all applicable requirements of law and approved the distribution of the Notices of Settlement as specified in the Settlement Agreement. *Id.* at 2, 5. Since that time, an Independent Fiduciary has confirmed that the Settlement terms are reasonable,[1] and only two Class Members out of more than 36,000 have objected to the Settlement.[2] Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement. As parties to the Settlement, Defendants do not oppose this motion.

## BACKGROUND

### I. PROCEDURAL HISTORY[3]

#### A. The Pleadings and Motion to Dismiss

On August 11, 2021, Plaintiffs filed this action alleging that Defendants breached their ERISA fiduciary duties by hiring themselves (and affiliated companies) to provide recordkeeping services to the Plan at a cost of up to four times more than what other recordkeepers would have

---

[1] *See Supp. Decl. of Brock J. Specht in Supp. of Plfs.' Mot. for Preliminary Approval of Class Action Settlement, Exhibit 1* ("*Independent Fiduciary Report*") ECF No. 102-01.

[2] *Decl. of Brock J. Specht in Supp. of Plfs.' Mot. for Final Approval of Class Action Settlement* ("*Third Specht Decl.*") ¶ *3.*

[3] The procedural history of this case was previously outlined in connection with Plaintiffs' motion for preliminary approval, ECF No. 99; ECF No. 99-01 at 2-3, and motion for attorneys' fees and costs, administrative expenses, and class representative service awards, ECF No.108; ECF No. 108-01 at 2–3. For ease of reference, Plaintiffs have recounted that history here.

charged for similar services. ECF No. 1. ¶¶ 4, 6-8. Defendants filed a motion to dismiss the Complaint, ECF No. 53, which the Court denied on April 18, 2022, ECF No. 78 at 20. Defendants filed an Answer on May 7, 2022. ECF No. 79.

### B.      Discovery, Mediation, and Settlement

Prior to resolving this matter, the parties engaged in significant discovery efforts. Defendants produced over 7,200 pages of documents in response to Plaintiffs' document requests. *See Decl. of Brock J. Specht in Supp. of Plfs' Mot. for Preliminary Approval of Class Action Settlement* ("*First Specht Decl.*") ECF No. 99-02 ¶ 12. Defendants also responded to Interrogatories propounded by Plaintiffs. After agreeing to mediate, the parties submitted a joint stipulation for reference to ADR, which requested the Court stay certain discovery deadlines pending this mediation. ECF No. 84. The Court granted the motion in part but declined to extend certain discovery deadlines as requested by the parties. *See* ECF No. 85. Given the Court's order, the parties engaged in a series of meet-and-confers and exchanged several emails regarding discovery issues. *See* ECF No. 87-1 at 4. While these efforts resolved most of the disputes between the parties regarding discovery issues, there remained a handful of disputed issues that the parties were not able to resolve. As a result, Plaintiffs filed a motion to compel Defendants to produce certain categories of documents, but requested the Court hold this motion in abeyance until after mediation. *See* ECF No. 87; ECF No. 87-1 at 1.

On October 11, 2022, the Parties engaged in a full-day, in-person mediation before Mr. Geronemus. *First Specht Decl.* ¶ 14. Mr. Geronemus is an experienced and well-respected mediator, who has successfully resolved numerous ERISA cases and other complex actions. *Id.*; ECF No. 99-04. After extensive arm's-length negotiations through Mr. Geronemus, the Parties

reached a settlement in principle, and then prepared the comprehensive Settlement Agreement that is the subject of this motion. *First Specht Decl. ¶ 15.*

### C.    Preliminary Approval of the Settlement

On September 27, 2023, the Court issued an Order granting preliminarily approval of the Settlement. ECF No. 103. In its Order, the Court preliminarily certified the Settlement Class for Settlement purposes and found that the terms of the Settlement are "fair, reasonable, and adequate," as well as in accordance with all applicable requirements of law and approved the distribution of the Settlement Notices as specified in the Settlement Agreement. *See id.* at 2-5. In addition, the Court approved of the Settlement Administrator being selected through Plaintiffs' competitive bidding process. *Id.* at 4. Through that process, Analytics Consulting LLC ("Analytics") was selected to serve as the Settlement Administrator, distribute the Notices, and carry out the other duties specified in the Settlement Agreement. *See Decl. of Brock J. Specht in Supp. of Plfs.' Mot. for Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Service Awards ("Second Specht Decl.")* ECF No. 108-02 ¶ 22.

## II.    OVERVIEW OF SETTLEMENT TERMS

### A.    Settlement Class

In granting preliminary approval of the Settlement, the Court preliminarily certified the following Settlement Class:

> All participants and beneficiaries of the Xerox Corporation Savings Plan at any time from August 11, 2015, until January 1, 2021 (the date that the Plan's current recordkeeper took over the recordkeeping function), excluding any persons with responsibility for the Plan's administrative functions or expenses.

ECF No. 103 at 3. Based on the information provided by Defendants, there are 35,998 Settlement Class Members. *See Mitchell Decl. ¶ 8.* This Settlement Class is consistent with certified classes

3

in several similar ERISA suits, as it includes all participants in the Plan during the Class Period except those with fiduciary responsibilities relating to the Plan.[4] *First Specht Decl. ¶ 3.*

### B.    Monetary Relief

Under the Settlement, Defendants will contribute a Gross Settlement Amount of $4.1 million to a common Settlement Fund. *Class Action Settlement Agreement*, ECF No. 99-3, ("*Settlement*") ¶¶ *2.31, 5.4–5.5.* After accounting for any Attorneys' Fees and Costs, Administrative Expenses, and Class Representative service awards approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members in accordance with the Plan of Allocation in the Settlement. *Id. ¶¶ 2.35, 5.9, 6.1.*

The Plan of Allocation provides for the distribution of the Net Settlement Amount to Class Members in proportion to each Class Member's share of the injuries alleged in this matter. As described in the Complaint, excessive recordkeeping fees were charged to participants "as a percentage of the employee's assets in the Plan." ECF No. 1 ¶ 20. Accordingly, the Plan of Allocation establishes a pro rata division of the Net Settlement Amount among Settlement Class Members (and eligible Beneficiaries and Alternate Payees) in proportion to the level of assets each Class Member held in the Plan. *Settlement ¶¶ 6.4-6.4.2.* This is done through the calculation of an Average Settlement Allocation Score for each Class Member, computed by the Settlement

---

[4] *See, e.g.*, *Wildman v. Am. Century Servs., LLC*, No. 4:16-CV-00737, 2017 WL 6045487, at *7 (W.D. Mo. Dec. 6, 2017) (certifying litigation class of all plan participants and beneficiaries excluding Defendants, members of the board, and "employees with responsibility for the Plan's investment or administrative functions"); *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y Sept. 5, 2017) ("*Moreno I*") (same); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678, at *9 (C.D. Cal. June 15, 2017) ("*Urakhchin I*") (same); *see also Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 335 at ¶ 3 (S.D.N.Y. Oct. 9, 2018) ("*Moreno III*") (certifying similar class for settlement purposes); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 3000490, at *3, *7 (C.D. Cal. Feb. 6, 2018) ("*Urakhchin II*") (same).

Administrator based on Class Members' account balances in the Plan for each quarter during the Class Period. *Id.* To calculate the Average Settlement Allocation Score, the Settlement Administrator will award one point for each dollar invested in the Plan, at the end of each quarter. *Id. ¶ 6.4.1.* A Settlement Class Member's Average Settlement Allocation Score shall be the average of the quarterly scores during the Class Period, weighted to account for partial quarters. *Id. ¶¶ 6.4.1-6.4.2.* Current Participants' accounts will be automatically credited with their share of the Settlement Fund. *Id. ¶ 6.5.1.* Former Participants will be sent their distribution by check. *Id. ¶ 6.6.*[5]

### C.   Prospective Relief

The Settlement also provides for meaningful prospective relief. Specifically, no later than five years from the Effective Date of the Settlement Agreement, Defendants will utilize the services of an independent consultant to assist with a request for proposal, fee benchmarking study, or other comparative analysis to ensure that the Plan's recordkeeping fees remain competitive. *Id.¶ 7.1.*

### D.   Release of Claims

In exchange for this relief, the Settlement Class will release the Defendants and affiliated persons and entities ("Released Parties") from all claims arising prior to the end of the Cass Period:

- That were asserted in the Action or that arise out of, relate to, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences that are alleged or asserted in the Action;[6] or

- That would be barred by res judicata based on entry by the Court of the Final Approval Order; or

---

[5] Under no circumstances will any monies revert to Defendants. Any checks that are uncashed will be paid into the Plan for the purpose of defraying future Plan administrative expenses. *Id. ¶ 6.10.*
[6] The release language goes on to provide certain examples that are not repeated here due to space limitations. The full release language, incorporated by reference, is in the Settlement Agreement at paragraph 2.41.

- That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund pursuant to the Plan of Allocation or to any action taken or not taken by the Settlement Administrator in the course of administering the Settlement; or

- That relate to the approval by the Independent Fiduciary of the Settlement Agreement.

*Id. ¶¶ 2.41.1; 2.41.2; 2.41.3; 2.41.4.* The Released Claims do not include claims to enforce the Settlement Agreement. *Id. ¶ 9.2.*

### E.   Class Notice and Reaction to the Settlement

Under the Court's Order preliminarily approving the Settlement, Analytics mailed Notices of Settlement to each of the 35,998 Settlement Class members identified by the Plans' recordkeeper. *See Mitchell Decl. ¶ 8.*

Prior to sending these Notices, Analytics cross-referenced the addresses on the class list with the United States Postal Service National Change of Address Database. *Id. ¶ 8.* In the event that any Notices were returned, Analytics re-mailed the Notice to any forwarding address that was provided, and performed a skip trace in an attempt to ascertain a valid address for the Class Member in the absence of a forwarding address. *Id. ¶¶ 10–11.* As a result, the notice program was very effective. Out of 35,998 Notices that were mailed, only 2.18% were ultimately undeliverable despite these efforts. *Id. ¶ 12.*

If any Class Members wanted further information, Analytics established a Settlement Website at www.xeroxerisasettlement.com. *Id. ¶ 13.* Among other things, the Settlement Website includes: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Dates" page, each containing clear notice of applicable deadlines; (3) case and settlement documents for download (including, among other things, the Settlement Agreement, Settlement Notices, Complaint, the Court's Preliminary

Approval Order, and Plaintiffs' Motion for Approval of Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Service Awards and related documents); (4) contact information for Class Counsel and the Defendants' Counsel; and (5) email, phone, and U.S. mail contact information for Analytics. *Id.* ¶ *13*. Beginning prior to the Notice mailing to the present, Analytics has also maintained a toll-free telephone support line as a resource for Class Members seeking information about the Settlement, as provided by Paragraph 12.2 of the Settlement. *Id*. ¶ *14*. The toll-free telephone line employs an interactive voice response system ("IVR system") to answer calls and provides callers the option of speaking with a live operator if they prefer. The toll-free number for the telephone support line is 1-833-850-8317. *Id*. This telephone number was referenced in the Settlement Notices and also appears on the Settlement Website. *Id*.

The deadline to submit objections to the Settlement was January 8, 2024. *See* ECF No. 103 ¶ 6. As of that date, only two Class Members objected to the Settlement. *See Third Specht Decl.* ¶ *3.*

The first objector, Joseph Paoli, is a Class Member who provided written notice of his objection by way of letter to Plaintiffs' counsel on November 17, 2023. *See Third Specht Decl. Ex. 1*. Mr. Paoli objects to the settlement because he believes the total settlement value is too low. *Id.* Mr. Paoli supports his objection with rough valuation calculations based on the number of Plan Participants as well as an account of what he experienced as a Plan Participant. *Id.*

The second objector, Darylann Mott, is a Class Member who filed her objection on January 2, 2024. *See* ECF No. 109. Ms. Mott makes two objections. First, Ms. Mott asserts that the attorneys' fees and expenses are too high, and suggests unsupported alternatives by which the Court should calculate fees. *See id.* Second, Ms. Mott objects to the Named Plaintiffs receiving any service award because it would "unduly enrich" them. *See id.*

On December 23, 2022, Analytics served CAFA notice to the 52 Attorneys General identified by Defendants as proper recipients, as well as the Attorney General of the United States, pursuant to 28 U.S.C. § 1715. *Mitchell Decl. ¶ 6*. No objections were received in response to the CAFA notices.

### F.    Review and Approval by Independent Fiduciary

Under Paragraph 3.1 of the Settlement Agreement and applicable ERISA regulations,[7] the Settlement was submitted to an Independent Fiduciary (Gallagher Fiduciary Advisors, LLC) for review following the Court's Preliminary Approval Order. *See Independent Fiduciary Report*. After reviewing the Settlement and numerous case documents, and interviewing counsel for each of the Parties, the Independent Fiduciary concluded that: (1) "The settlement terms, including the scope of the release of claims; the amount of cash received by the plan; the proposed attorney's fee award; any non-monetary relief included in the Settlement, and any other sums to be paid from the recoveries, are reasonable in light of the plan's likelihood of full recovery, the value of claims foregone and the risks and costs of litigation," *id.* ¶ 3; (2) "[A]n arm's-length Settlement was achieved after hard-fought negotiations between the parties, and is reasonable given the uncertainties of a larger recovery for the Class at trial and the value of claims foregone," *id.*; and (3) "Although the transaction will have the incidental effect of releasing the fiduciaries, the Settlement is not designed to benefit those fiduciaries but rather to resolve claims that have not been fully adjudicated and to enable the Plan to recover a portion of its losses," *id.* ¶ 5. Accordingly, the Independent Fiduciary determined that "it is fair to conclude that the Settlement on the terms described above meets the requirements of the Class Exemption." *See id.* at 5.

---

[7] *See* Prohibited Transaction Exemption 2003–39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

# ARGUMENT

## I.   STANDARD OF REVIEW

To approve a proposed class settlement that would bind potential class members, the Court must conduct a hearing and find that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). To find that the settlement is fair, reasonable, and adequate, the Court must consider: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. *Id.* Courts in the Second Circuit also traditionally consider the *Grinnell* factors as part of their review: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005).[8] When conducting this assessment, the Court should remain "mindful of the strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores*, 396 F.3d at 116 (quotation omitted).

---

[8] The Rule 23(e) factors "supplement rather than displace these *Grinnell* factors." *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704, 2019 WL 6842332, at *1 (S.D.N.Y. Dec. 16, 2019). Consistent with the intent of the 2018 amendments to the Federal Rules of Civil Procedure, only those *Grinnell* factors that are relevant to this Settlement are addressed here. *See* Fed. R. Civ. P. 23(e)(2) advisory committee note (2018) ("This amendment . . . directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal.").

## II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The relevant factors outlined above overwhelmingly favor approval of the Settlement in this case. Further, the Independent Fiduciary's report and the near complete absence of objections from Class Members further confirm that the Settlement is fair, reasonable, and adequate.

### A.    The Class Representatives and Class Counsel Have Adequately Represented the Class

"Rule 23(e)(2)(A) requires a Court to find that 'the class representatives and class counsel have adequately represented the class' before preliminarily approving a settlement." *GSE Bonds*, 2019 WL 6842332, at *2. This adequacy standard is easily met here.

The named Plaintiffs have adequately represented the Settlement Class. At the outset of litigation, the named Plaintiffs signed written acknowledgements of their duties as class representatives, and each of them have sought to fulfill those duties throughout the course of this case. *See Carrigan Decl.*, ECF No. 99-6 ¶ 2 & Ex. 1; Venti Decl.*, ECF No. 99-7 ¶ 2 & Ex. 1; Yelle Decl.*, ECF No. 99-8 ¶ 2 & Ex. 1*. Among other things, the named Plaintiffs have reviewed the allegations in the Complaint, provided information and documents to counsel to assist in the investigation and prosecution of the action, made themselves available to answer questions from counsel and to stay informed on the status of the action, and conferred with counsel regarding the potential strengths and weaknesses of the claims asserted in this action and the potential risks and rewards of the Settlement compared to pursuing further litigation. *See Carrigan Decl. ¶¶ 2-3 & Ex. 1; Venti Decl. ¶¶ 2-3 & Ex. 1; Yelle Decl. ¶¶ 2-3 & Ex. 1*. The named Plaintiffs fall within the proposed Settlement Class and are not aware of any conflicts between themselves and any other Class Members. *See Carrigan Decl. ¶ 2 & Ex. 1; Venti Decl. ¶ 2 & Ex. 1; Yelle Decl. ¶ 2 & Ex. 1*. Thus, the Named Plaintiffs are adequate class representatives who have diligently pursued this action on behalf of the Class.

Class Counsel have also adequately represented the Class. The lawyers at Nichols Kaster are experienced ERISA litigators with a proven track record. *See First Specht Decl. ¶¶ 17-24.* Indeed, Nichols Kaster "is one of the relatively few firms in the country that has the experience and skills necessary to successfully litigate a complex ERISA action such as this." *Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *9 (S.D. Ohio Feb. 18, 2021). As detailed in the attorney declarations accompanying the preliminary approval and fees motions, Nichols Kaster has (1) won favorable rulings on dispositive motions and/or class certification in over a dozen ERISA cases; (2) recently taken three ERISA class actions to trial; (3) successfully litigated an appeal before the First Circuit in *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018); and (4) negotiated numerous ERISA class action settlements in addition to the present settlement. *See First Specht Decl. ¶¶17-24; Second Specht Decl. ¶¶ 3-9.* Given this experience, Class Counsel are well qualified to represent the Cass. *See In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (finding class counsel adequate where they had "extensive experience" in ERISA litigation and federal class actions).

**B.    Class Counsel and Defense Counsel Negotiated this Settlement at Arm's Length**

The second factor examines whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). A class action settlement "will enjoy a presumption of fairness" where the settlement "is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation[.]" *In re Excess Value Ins. Coverage Litig.*, 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) (quotation omitted); *see also Wal-Mart*, 396 F.3d at 116. That is exactly the situation here. Class Counsel and Defendants' Counsel (Morgan, Lewis & Bockius, LLP) are knowledgeable and experienced in complex class actions such as this and were assisted in their negotiations by Mr. Geronemus, an experienced and well-respected mediator. *See*

*First Specht Decl.* ¶¶ *14 & Ex. B, 18–20*. And the settlement negotiations took place in the context of a full-day arm's length mediation session before an experienced and impartial mediator. *See id.* ¶ *14 & Ex. B*. This factor also favors settlement approval. *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *2 (finding procedural fairness evidenced by arm's length negotiations where parties engaged an experienced mediator to facilitate extensive and informed negotiations).

"[T]he stage of the proceedings and the amount of discovery completed" are also pertinent. *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-cv-1113, 2016 WL 6542707, *8 (D. Conn. Nov. 3, 2016) (quotation omitted). While this case settled somewhat early in the discovery period, the following had already occurred: (1) Class Counsel undertook an extensive investigation of the factual and legal bases for Plaintiffs' claims prior to commencing the action, *First Specht Decl.* ¶ *10*; (2) the parties' legal positions were staked out in connection with the motion to dismiss, *Id.* ¶ *11*; (3) Defendants produced 7,200 pages of documents prior to mediation, *Id.* ¶ *12*; and (4) Class Counsel had the necessary experience and qualifications to evaluate the Parties' legal positions and the early discovery that was produced, *Id.* ¶¶ *18-20*. These circumstances further favor approval of the Settlement. *See Kemp-DeLisser*, 2016 WL 6542707, at *8 ("Although formal discovery had yet to occur at the time the parties engaged in settlement negotiations, Class Counsel conducted extensive investigation into the facts, circumstances, and legal issues associated with this case before agreeing to the Settlement.").[9]

---

[9] Although this case was settled early, Class Counsel are no strangers to lengthy ERISA litigation. As noted above, Class Counsel have recently taken three ERISA class cases to trial, and litigated the *Deutsche Bank* ERISA action in this District to the very eve of trial before it was settled. *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 321 at 5 (S.D.N.Y. Aug. 14, 2018) ("*Moreno II*") ("[T]he parties reached a settlement-in-principle on July 8, 2018 immediately preceding the scheduled start date of trial." (internal parentheses omitted)).

**C.      The Settlement Provides Significant Relief to the Class**

The third factor under Rule 23 is whether "the relief provided for the class is adequate" in light of "the costs, risks, and delay" of further litigation and other relevant considerations.[10]

**1.      The Significant Recovery Compares Favorably to Other ERISA Settlements**

As the Independent Fiduciary noted in its Report, the recovery provided by the Settlement is "reasonable in light of the plan's likelihood of full recovery, the value of claims forgone and the risks and costs of litigation." *First Specht Decl. Ex. 1 at ¶ 3*. Indeed, the $4.1 million settlement is on par with settlements negotiated in similar ERISA cases in this Circuit. *See First Specht Decl. ¶ 9*. The negotiated monetary relief represents a significant portion of the alleged losses sustained by the Plan. At the time of the mediation, Plaintiffs' damages models estimated that the total losses were approximately $14 million. *First Specht Decl. ¶ 4*. Based on this estimate, the $4.1 million recovery represents approximately 29% of the total estimated losses. *Id*.

The Settlement also provides for meaningful prospective relief. As noted above, no later than five years from the Effective Date of the Settlement Agreement, Defendants will utilize the services of an independent consultant to assist with a request for proposal, fee benchmarking study, or other comparative analysis to ensure that the Plan's recordkeeping fees remain competitive. *Settlement ¶ 7.1*. This relief directly addresses the core issue that Plaintiffs raised in the lawsuit and is designed to ensure that the Plan's expenses are reasonable going forward. This further supports approval of the Settlement. *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 348 at 4-5 (S.D.N.Y. Mar. 7, 2019) ("*Moreno V*") (finding that "non-

---

[10] Other relevant considerations include (1) the terms of any award of attorneys' fees, (2) any related agreement, and (3) the effectiveness of any proposed distribution method. The first consideration has been addressed in connection with Plaintiffs' Motion for Attorneys' Fees, *see* ECF No. 108-01, and with respect to the second consideration, there are no agreements relating to the Settlement other than the fee agreement that Class Counsel already has reported in connection with that motion, *see id.* at 3. The third criteria is discussed below.

monetary benefits"—including independent fiduciary review of the proprietary investments in the plan—"have significant value for Plan participants"); *accord Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 CIV. 4270, 2009 WL 5851465, at *4 (S.D.N.Y. Mar. 31, 2009) (finding that settlement was "fair, reasonable, and adequate" where it provided for "meaningful injunctive relief").

Moreover, each of the adequacy factors enumerated in Rule 23(e)(2)(C) support approval of the Settlement. These factors include:

(i)    the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under rule 23(e)(3)[.]

Fed. R. Civ. P. 23(e)(2)(C). Each of these factors is briefly discussed below.

## 2.   Continued Litigation Would Have Entailed Significant Costs and Risk

In the absence of a settlement, Plaintiffs would have faced potential litigation risks. *See In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (noting that there is a "general risk inherent in litigating complex claims such as these to their conclusion."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."), *aff'd sub nom. In re PaineWebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997). While Plaintiffs prevailed on the motion to dismiss, there was a risk that the Court might have dismissed the claims on summary judgment. And, if the case proceeded

to trial, Defendants still might have prevailed.[11] Finally, even if Plaintiffs prevailed on liability, issues regarding proof of loss would have remained. *See* Restatement (Third) of Trusts, § 100 cmt. b(1) (determination of losses in breach of fiduciary duty cases is "difficult"); *Sacerdote*, 328 F. Supp. 3d at 280 (finding that "while there were deficiencies in the Committee's [fiduciary] processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that … the Plans suffered losses as a result.").

   None of this is to say that Plaintiffs lacked confidence in their claims. But there is no doubt that continuing the litigation would have resulted in complex and costly proceedings, and it would have delayed any relief to the Class, even if Plaintiffs ultimately prevailed. ERISA 401(k) cases such as this "often lead[] to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). Indeed, these cases can extend for a decade before final resolution, sometimes going through multiple appeals. *See, e.g.*, *Tussey v. ABB, Inc.*, 850 F.3d 951, 954–56 (8th Cir. 2017) (recounting lengthy procedural history of case that was initially filed in 2006, and remanding to district court a second time); *Tibble v. Edison Int'l*, CV 07-5359, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed in 2007). The duration of these cases is, in part, a function of their complexity, which further weighs in favor of the Settlement. *See Abbott v. Lockheed Martin Corp.*, No. 06-cv-701-MJR-DGW, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERISA cases such as this are "particularly complex"); *Koerner v. Copenhaver*, No. 12-1091, 2014 WL 5544051, at *4 (C.D. Ill. Nov. 3, 2014) ("The facts giving rise to Plaintiffs' claims are complicated,

---

[11] *See, e.g.*, *Rozo v. Principal Life Ins. Co*., 2021 WL 1837539 (S.D. Iowa Apr. 8, 2021); *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018), *aff'd*, 9 F.4th 95 (2d Cir. 2021); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019).

require the elucidation of experts, and are far from certain."). Given the risks, cost, and delay of further litigation, it was reasonable and appropriate for Plaintiffs to reach a settlement on the negotiated terms. *See Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) ("[S]ettlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways").

### 3.  The Proposed Method of Distributing Relief to the Class is Effective

The Settlement also treats Class Members equitably and will be delivered through an effective method of distribution. As noted above, the Net Settlement Amount will be allocated among all eligible Class Members on a *pro rata* basis pursuant to a common formula as set forth in the Plan of Allocation. *See supra* at 4. The proposed method for distributing the Settlement proceeds is fair and reasonable. Current Participants will have their Plan accounts automatically credited with their share of the Settlement, and Former Participants will automatically receive a check with their share of the Settlement. *See id.* This method of distribution is both effective and efficient. No monies will revert to Defendants, and any uncashed checks will be used to defray Plan administrative fees and expenses that would otherwise be borne by participants. *See Settlement ¶ 6.10.* This method of distribution has been approved in numerous ERISA class action settlements, including the *Moreno* and *Andrus* cases in the Southern District of New York and the *M&T* settlement in the Western District of New York. *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 322-1 at ¶¶ 6.5-6.6 (S.D.N.Y. Aug. 14, 2018) ("*Moreno IV*"); *Andrus v. New York Life Ins. Co.*, No. 1:16-cv-05698, ECF No. 66-1 at ¶¶ 6.5-6.6 (S.D.N.Y. Feb. 14, 2017); *In re: M&T Bank Corp. ERISA Litig.*, No. 1:16-cv-00375, ECF No. 159-1 at ¶¶ 6.5-6.6 (Dec. 26, 2019); *see also Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 478-

79 (E.D. Pa. 2007). And, in response to the Settlement Notices, there have been no objections to the Plan of Allocation.

### 4.   The Settlement Imposes a Reasonable Limitation on Attorneys' Fees

The Settlement terms relating to attorneys' fees are also fair and reasonable. The Settlement does not provide for the award of a specific amount of attorneys' fees and is not conditioned on the award of *any* such fees, which will be reserved to the Court in its discretion upon application by Class Counsel. *See Settlement ¶ 8.2.* Moreover, with respect to the timing of payment, any attorneys' fees will be paid at the same time that funds to the Class are distributed. *See id. ¶ 5.9.*

### 5.   No Separate Agreements Bear on the Adequacy of Relief to the Class

As the Settlement states, "[t]his Settlement Agreement and the exhibits attached hereto constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any party concerning the Settlement other than those contained in this Settlement Agreement and the exhibits thereto." *Id.¶ 13.13.* Accordingly, there are no separate agreements bearing on the adequacy of relief to the Class. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

### D.   The Positive Response from the Independent Fiduciary Supports the Settlement

The positive response from the Independent Fiduciary supports the Settlement. Based on its review, the Independent Fiduciary concluded, "an arm's-length Settlement was achieved after hard-fought negotiations between the parties, and is reasonable given the uncertainties of a larger recovery for the Class at trial and the value of claims foregone." *Independent Fiduciary Report ¶ 3.*

### E.   The Overwhelming Majority of Class Members Support the Settlement

The Class Members' reaction to the Settlement has been positive, which favors its approval. *See Grinnell Corp.*, 495 F.2d at 463 (considering "the reaction of the class to the settlement" in

assessing whether to approve settlement). To assess the reaction of the Class to the Settlement, courts may consider both the "quality and quantity of any objections." *Simerlein v. Toyota Motor Corp.*, No. 3:17-CV-1091 (VAB), 2019 WL 2417404, at *19 (D. Conn. June 10, 2019) (quoting 4 Newberg on Class Actions § 13:54 (5th ed.) at 108). Quantitatively, only two out of 36,000 Class Members objected to the Settlement, which represents well under one-hundredth of one percent of Class Members. This small proportion of objecting Class Members "can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (quoting 4 Newberg on Class Actions § 13:54 (5th ed.) at 108) (noting eighteen objections out of five million individuals favored approval); *see also, e.g.*, *In re Frontier Commc'ns Corp.*, 2022 WL 4080324, at *12 (D. Conn. May 20, 2022) (finding that one objection of 190,323 class members favored settlement approval); *Sykes v. Harris*, No. 09 CIV. 8486 (DC), 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016) (finding that four objections out of 215,000 class members favored settlement approval); *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 763 (2d Cir. 2020) (affirming settlement approval where there was only one objection out of 13,530 notices that were sent out to class members). The small number of objections relative to the size of the class reflects a positive reaction to the Settlement, which thereby supports its approval.

Qualitatively, the substance of the two objections is no more persuasive, and the Court may readily overrule each. The first objector, Mr. Paoli, objects to the settlement because he believes the total settlement value is too low. He asserts that, based on his calculations and experience, a more appropriate settlement would have been close to *two billion dollars* (specifically, $1,800,000,000.00). *See Third Specht Decl. Ex. 1.* As an initial matter, Mr. Paoli's suggestion is well outside any reasonable valuation of damages in this case. *See* ECF No. 99-1 at 11–12. Still, even if his objection were more appropriately tailored to the potential damages in this case, Mr.

Paoli fails to appreciate the uncertainty and risk associated with litigation and makes no mention of the meaningful prospective relief that the Settlement secured. ECF No. 99-1, pp. 10–14; *see also Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 95 (2d Cir. 2019) (explaining that, even though an objector argued "that the settlement was just not enough," this argument failed because "the litigation risks [] were real on both the law and the facts"). For this reason, "courts routinely overrule objections from class members that the anticipated relief they will receive under the settlement is too low." *Sykes*, 2016 WL 3030156, at *19 (collecting cases). The settlement of this case was fair and reasonable, and the Court should overrule Mr. Paoli's objection.

The second objector, Ms. Mott, objects to the settlement on two grounds. First, Ms. Mott objects because she generally believes the attorneys' fees and expenses are too high. ECF No. 109. The requested attorneys' fees and expenses are reasonable, however, in consideration of the expense, risk, and skill necessary to diligently litigate this case, as detailed at length in Plaintiffs' fee request. *See* ECF No. 108-1. Ms. Mott's objection makes no effort to articulate why the requested fees are too high; such conclusory objections may be readily overruled. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 502 (S.D.N.Y. 2009) (overruling objections and noting "[i]t is precisely the promise of a reasonable fee that encourages plaintiffs' attorneys to accept cases such as these and risk spending their own financial resources and personal efforts for years until recovery can be obtained for the class"). Ms. Mott's proposal—that Class Counsel be paid "the hourly rate paid by the state of Connecticut for the defense of indigent clients" or "the average Connecticut attorney fee," ECF 109—is not supported by the law. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Grinnell*, 495 F.2d at 470; *see also Wal-Mart Stores*, 396 F.3d at 121 ("The trend in this circuit is

toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of [the] litigation." (internal citation and quotation omitted)).

Second, Ms. Mott objects to the Named Plaintiffs receiving any service award because it would "unduly enrich" them. ECF No. 109. Contrary to Ms. Mott's objection, the service awards properly compensate the Named Plaintiffs for the effort and risk associated with their role in this litigation, which benefited the Class, including Ms. Mott. *Hyland v. Navient Corp.*, 48 F.4th 110, 124 (2d Cir. 2022) (affirming final approval of class action and finding service awards were appropriate in recognition of class representatives' litigation efforts). The Court should overrule Ms. Mott's objections.

Ultimately, considering the relatively small number of objections and the lack of substance within those objections, the reaction of the Class to the Settlement is overwhelmingly positive. The Court should therefore overrule these outlying objections and approve the Settlement as fair, reasonable, and adequate. *See Third Specht Decl.* ¶ *3*; *Wal-Mart Stores*, 396 F.3d at 118 ("the absence of substantial opposition is indicative of class approval").

## III. THE CLASS NOTICE PROGRAM WAS REASONABLE AND EFFECTIVE

The class notice program in this case was also reasonable and satisfied the requirements of Rule 23 and due process. The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is the type of notice that was provided here.

As noted above, the Settlement Administrator mailed the Court-approved Settlement Notices to Class Members via U.S. Mail to their last known address. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985);

*Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved repeatedly as sufficient notice of a proposed settlement."); *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405, 2015 WL 10847814, at *11 (S.D.N.Y. Sept. 9, 2015) ("Here, the robust Notice Program, which included mailing individual Notices to the last known address of all Class members, more than meets the requirements of due process, Rule 23, and the notice standards articulated by the Second Circuit."). The record reflects that approximately 98% of Settlement Notices were successfully delivered, *Mitchell Decl. ¶ 12*, which highlights the notice program's effectiveness, *see, e.g.*, *In re Facebook, Inc., IPO Sec. and Deriv. Litig.*, 343 F. Supp. 3d 394, 411 (S.D.N.Y. 2018) (finding notice reasonable where 95% of packets were mailed noting "[t]he relevant question is not whether some individual shareholders got adequate notice, but rather whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised." (quotations omitted)).

The Notices' content was also reasonable. Both Settlement Notices included, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions for submitting a claim (in the event that one was required); (6) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (7) the date, time, and location of the final approval hearing; (8) contact information for the Settlement Administrator; and (9) information regarding Class Counsel and the amount that Class Counsel would seek in attorneys' fees (as well as the proposed service award). *See Mitchell Decl. Exs. 1 & 2*. This was more than sufficient to "apprise the prospective members of the class of the terms of the proposed settlement and of the options . . . open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)); *see also*

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (settlement notice "need only describe the terms of the settlement generally"). Notably, no Settlement Class Member has claimed that the Notices were deficient, and to the extent they had any questions, they could review the settlement website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel.

Finally, the notice requirements of the Class Action Fairness Act have also been fully satisfied. *See* 28 U.S.C. § 1715(b) (setting forth notice requirements); *Mitchell Decl. ¶ 6.*

## IV.   THE COURT SHOULD REAFFIRM CERTIFICATION OF THE SETTLEMENT CLASS

In its Order for Preliminary Approval of the Settlement, the Court preliminarily certified the following Settlement Class:

> All participants and beneficiaries of the Xerox Corporation Savings Plan at any time from August 11, 2015, until January 1, 2021 (the date that the Plan's current recordkeeper took over the recordkeeping function), excluding any persons with responsibility for the Plan's administrative functions or expenses.

ECF No. 103 at 3. In support of preliminary approval, Plaintiffs previously established that: (1) the class is numerous; (2) common issues pertain to all class members; (3) Plaintiffs' claims are typical of other class members' claims; (4) Plaintiffs are adequate class representatives; (5) Class Counsel are experienced and competent; (6) class certification is appropriate under Rule 23(b)(1)(A) due to the risk of inconsistent adjudications; and (7) class certification is also appropriate under Rule 23(b)(1)(B) because any individual adjudication would be dispositive of other class members' interests. ECF No. 99-01 at 16-21. Nothing has changed since the Court preliminarily certified the Settlement Class. Accordingly, the Court should reaffirm its certification of the class.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the settlement and enter the accompanying proposed Final Approval Order.


Dated: January 22, 2024                    Respectfully submitted,


**NICHOLS KASTER, PLLP**
By:  */s/ Brock J. Specht*
Paul J. Lukas (admitted pro hac vice)
Brock J. Specht (admitted pro hac vice)
Grace I. Chanin (admitted pro hac vice)
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Phone: 612-256-3200
Fax: 612-338-4878
plukas@nka.com
bspecht@nka.com
gchanin@nka.com


**GARRISON, LEVIN-EPSTEIN, FITZGERALD & PIRROTTI, P.C.**
Joshua R. Goodbaum (ct28834)
405 Orange Street
New Haven, CT 06511
Tel: (203) 777-4425
Fax: (203) 776-3965

ATTORNEYS FOR PLAINTIFFS