UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRIS CARRIGAN, MICHAEL VENTI, and SYLVAIN YELLE, on behalf of themselves and all others similarly situated, and on behalf of the XEROX CORPORATION SAVINGS PLAN<br>*Plaintiffs*,<br><br>v.<br><br>XEROX CORPORATION, XEROX CORPORATION PLAN ADMINISTRATOR COMMITTEE, and JOHN DOES 1–30,<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 3:21-CV-1085 (SVN)<br><br><br><br><br><br>April 16, 2024 |

## ORDER ON MOTION FOR ATTORNEYS' FEES

Sarala V. Nagala, United States District Judge.

The Court previously approved the class action settlement in this action brought under the Employee Retirement Income Security Act ("ERISA") on behalf of employees of the Xerox Corporation, and must now decide the amount of compensation to award Plaintiffs' counsel—the law firms of Nichols Kaster, PLLP and Garrison, Levin-Epstein, Fitzgerald & Pirrotti, P.C. (together "Class Counsel")—for their role in obtaining a settlement of class claims. The settlement provides a $4.1 million settlement fund for more than 36,000 class members. As compensation for their efforts, Class Counsel request attorneys' fees in the amount of $1,366,666 (one-third of the $4.1 million Settlement Fund), reimbursement of $48,980.72 in litigation expenses, $106,895.23 in settlement administration expenses, and $5,000 in service awards for each of the three Class Representatives.

For the reasons that follow, the motion is GRANTED in part and DENIED in part. Plaintiffs' motion is granted in full as to Plaintiffs' request for litigation expenses, settlement

administration expenses, and service awards. As to attorney's fees, instead of awarding Class Counsel fees in the amount of one-third of the settlement, the Court awards Class Counsel one-fourth of the settlement amount: $1,025,000.00.

## I. BACKGROUND

Plaintiffs' complaint alleges that Defendants breached their fiduciary duties under ERISA by hiring a Xerox-affiliated recordkeeper to provide services to the Xerox Corporation Savings Plan, at a cost of up to four times more than what other recordkeepers would have charged for similar services. Compl., ECF No. 1, ¶¶ 4, 6–8. The Court denied Defendants' motion to dismiss the complaint in April of 2022.

The parties engaged in discovery through October of 2022. Discovery involved Defendants producing more than 7,000 documents, as well as a motion to compel filed by Plaintiffs that the Court held in abeyance in advance of the parties' mediation efforts. On October 11, 2022, the Parties engaged in a full-day, in-person mediation, after which they reached an agreement in principle. On September 27, 2023, the Court granted preliminary approval of the settlement, ECF No. 103, which the Court approved in final form on February 6, 2024, after a fairness hearing.

Under the settlement, Defendants will contribute $4.1 million to a common settlement fund. After accounting for attorneys' fees and costs, administrative expenses, and class representative service awards approved by the Court, the net amount will be distributed to eligible class members. The plan of allocation provides for the distribution of funds to class members in proportion to each member's share of the injuries alleged in this matter. Class Counsel worked a total of 839.4 billable hours on this matter in achieving settlement. This represents work performed up to December 8, 2023, and excludes time spent preparing and arguing the motion to approve the settlement and attorneys' fees, and time that will be spent administering the settlement.

**II.     LEGAL STANDARD**

In Rule 23 class actions, the "attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  The reasonableness of a fee is evaluated based on consideration of the six *Goldberger* factors:  "(1) counsel's time and labor; (2) the litigation's magnitude and complexity; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 423 (2d Cir. 2010) (citing *Goldberger*, 209 F.3d at 50).  In deciding an appropriate fee, the Court must "act as a fiduciary who must serve as a guardian of the rights of absent class members."  *Id.* at 419 (quoting *City of Detroit v. Grinnell Corp.* ("*Grinnell II*"), 560 F.2d 1093, 1099 (2d Cir. 1977) *abrogated on other grounds by Goldberger*, 209 F.3d at 43).

The Second Circuit has approved the use of two methods to calculate attorneys' fees:  the "lodestar" method and the "percentage of the fund" method.  *See id.* at 417–19.  "Under the lodestar method, the district court multiplies the reasonable hours billed by a reasonable hourly rate to create a presumptively reasonable fee." *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 384 (S.D.N.Y. 2017) (citing *Goldberger*, 209 F.3d at 47; *McDaniel*, 595 F.3d at 423). "Under the percentage of the fund method," which is the trend in this Circuit, "class counsel is awarded a reasonable percentage of the total value of the settlement fund created for the class." *Id.*  As the Second Circuit recognized in *McDaniel*, neither method is perfect. *McDaniel*, 595 F.3d at 418–19.  The "lodestar method creates 'a disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of the line-item fee audits.'" *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) (quoting *Wal–Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)).  The

percentage method, on the other hand, "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," *Wal–Mart Stores, Inc.*, 396 F.3d at 121 (quoting *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ. 1262 RWS, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002)), but risks "encouraging counsel to settle a case prematurely once their opportunity costs begin to rise," *McDaniel*, 595 F.3d at 419. In the end, fee awards "should be based on scrutiny of the unique circumstances of each case, and a 'jealous regard to the rights of those who are interested in the fund.'" *Id.* at 426 (quoting *Goldberger*, 209 F.3d at 53).

## III. DISCUSSION

For the reasons that follow, the Court finds that Class Counsel's request for one-third of the fund ($1,366,666.00) is not a reasonable award for this case. The Court instead awards attorneys' fees in the amount of one-fourth of the settlement fund ($1,025,000.00).

The Court adopts the three-step approach set forth in *Colgate-Palmolive* to evaluate the requested percentage of fund attorney's fees in this case. 36 F. Supp. 3d at 348; *accord In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS), 2018 WL 5839691 (S.D.N.Y. Nov. 8, 2018), *aff'd sub nom. Kornell v. Haverhill Ret. Sys.*, 790 F. App'x 296 (2d Cir. 2019) (summary order). The first step is to determine a baseline reasonable fee by reference to other common fund settlements of a similar size, complexity, and subject matter. *Colgate-Palmolive*, 36 F. Supp. 3d at 348. This step involves consideration of three of the *Goldberger* factors: (1) the requested fee in relation to the settlement, (2) the magnitude and complexity of the case, and (3) the policy consideration of avoiding a windfall to class counsel. *Id.* The second step is to make any necessary adjustments to the baseline fee considering the *Goldberger* factors of litigation risk, quality of representation, and other public policy concerns. *Id.* at 351. The third

step is to apply the lodestar method as a cross-check, which addresses the final *Goldberger* factor of the time and labor expended by counsel. *Id.* at 353.

### A. Comparison to Court-Approved Fees in Other Common Fund Settlements

In using the percentage of the fund approach, the critical *Goldberger* factor is the size of the requested fee in relation to the size of the settlement fund, using a baseline reasonable percentage fee. *See Colgate-Palmolive*, 36 F. Supp. 3d at 348. This ensures that the fee awarded to counsel is baseline reasonable in relation to the size, complexity, and subject matter by comparing to fees awarded in similar cases. As the court in *Colgate-Palmolive* explained, "[h]istorical data of fees awarded in common fund cases provides an unbiased and useful reference for comparing fees cases of similar magnitude . . . ." *Colgate-Palmolive*, 36 F. Supp. 3d at 349. In this case, Class Counsel seeks 33% ($1,366,666.00) of the total settlement of $4,100,000.00.

Based on the same historical data as used by the court in *Colgate-Palmolive*, the Court here finds that the baseline reasonable percentage of the fund awarded as attorney fees for ERISA cases with similar size, complexity, and subject matter is 25%. For cases with a total recovery of $4.1 million, the median percentage of the fund awarded for attorneys' fees is 25% with a standard-deviation of 9.8%. Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Stud. 248, 265 (2010). This study also found that for "high-risk" ERISA cases, the percentage of the recovery awarded for fees was 24.6%, whereas low-risk cases awarded 23.2% of the total fund. *Id.* More recent information supports these findings, as well. For cases where the recovery is between $2.65 million and $6.5 million, the mean percentage of recovery is between 26% and 28%. Theodore Eisenberg, Geoffrey P. Miller, & Roy Germano, *Attorneys' Fees in Class Actions: 2009–2013*, 92 N.Y.U. L. Rev. 937, 948 & fig. 5 (2017); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 CIV.

2613, 2020 WL 6891417, at *3 (S.D.N.Y. Nov. 24, 2020) (reproducing figure 5). This study also found that the mean and median percentage of fees awarded in ERISA cases were both 26%. Eisenberg, *supra*, at 952. High-risk ERISA cases had a mean fee of 27.21%, and low/median risk ERISA cases had a mean fee at 24.52%. *Id.* at 959.

Here, Class Counsel have requested 33% of the total fund. While not out of line with the standard deviation from the historical data published in 2010, counsel's request is above the median and mean for cases of similar size, complexity, and subject matter across both sets of data. Accordingly, the Court finds that an award in the amount of 25% of the total fund is more in line with ERISA cases of the same size, complexity, and subject matter. Class Counsel have not provided reasons why this case is unique, so as to warrant a higher award than the baseline. Rather, the out-of-circuit cases cited by Class Counsel in support of their requested fee support the Court's decision to use a median percentage. ECF No. 108-1 at 21 n.9. For instance, the 33% award in *Tussey v. ABB, Inc.*, was found to be reasonable considering the case's "novel area of litigation," the "daunting risk" posed by the novel area of litigation and decades of actual litigating, and the fact that the case went to trial, involved an appeal, and went through three rounds of mediation. No. 06-CV-4305-NKL, 2019 WL 3859763, at *2–5 (W.D. Mo. Aug. 16, 2019). A similar rationale applied in *Clark v. Duke University*, where the court noted that counsel spent more than 7,800 hours on the matter. No. 1:16-CV-1044, 2019 WL 2579201, at *2–4 (M.D.N.C. June 24, 2019). Although *Clark* recognizes that ERISA excessive fees cases are relatively novel, the case is distinguishable because the attorneys spent nearly ten times as many hours litigating it as Class Counsel did here. Accordingly, Class Counsel have not provided a rationale for why a higher than mean or median rate should apply here.

6

For the reasons that follow—especially as described in the cross-check of the fund with the lodestar—the Court finds that 25% is an appropriate and reasonable percentage award for this case.

### B. Consideration of Risk, Result and Policy Considerations

The next step of the analysis is to consider three additional *Goldberger* factors—the risk of the litigation, the quality of the representation, and any remaining policy considerations. If this case were exceptional in any of these areas, then an increase or decrease of the baseline percentage would be warranted. However, nothing in the record warrants a higher percentage under any of these *Goldberger* factors.

#### 1. Risk of the Litigation

Risk is assessed "as of when the case is filed." *Goldberger*, 209 F.3d at 55. Assuming significant risks warrants a substantial fee because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *City of Detroit v. Grinnell Corp.* ("*Grinnell I*"), 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger*, 209 F.3d 43 (2d Cir. 2000).

Without settlement, Class Counsel would have faced considerable litigation risks inherent in all ERISA litigation actions. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("[T]he risk for Plaintiffs' Counsel in this ERISA company stock case was significant. Moreover, in addition to the risks discussed above, Plaintiffs' Counsel had to contend with the traditional risks inherent in any contingent litigation."). As with other ERISA litigation, "[t]he risk of zero recovery here was present from the inception of this case." *Bekker v. Neuberger Berman Grp. 401(k) Plan Inves. Comm.*, 504 F. Supp. 3d 265, 270 (S.D.N.Y. 2020). Further, Class Counsel initiated this case without the certainty of the success of claims that can provided

7

when, for example, litigation follows a government investigation. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009), *aff'd sub nom. Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (summary order). Though Plaintiffs prevailed in opposing Defendants' motion to dismiss, Plaintiffs still faced potential summary judgement and possibly trial.

However, that Class Counsel faced the risk inherent to an ERISA case is not a reason to increase the baseline percentage. It is reasonable to assume that large ERISA class actions typically will involve significant risk, and the Court has accounted for the particularities of ERSIA litigation by comparing the percentage of awards in similar ERISA cases. Class Counsel have provided no reason why this case faced exceptional risk warranting a higher-than-mean or median percentage of the fund. Consequently, the risk level in this case does not indicate that either an increase or a decrease in the baseline percentage is warranted.

### 2. The Quality of Representation

The quality of Class Counsel's quality of representation also supports awarding counsel 25% of the fund.

As Class Counsel points out, several courts have acknowledged Nichols Kaster's expertise in ERISA class action litigation. *See, e.g.*, *Karpik v. Huntington Bancshares Inc.*, No. 2:17-CV-1153, 2021 WL 757123, at *9 (S.D. Ohio Feb. 18, 2021) ("To that end, [Nichols Kaster] is one of the relatively few firms in the country that has the experience and skills necessary to successfully litigate a complex ERISA action such as this."); *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15-CV-9936 (LGS), 2017 WL 3868803, at *11 (S.D.N.Y. Sept. 5, 2017) ("Plaintiffs' counsel are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans . . . ."). Counsel has also submitted declarations explaining their favorable

rulings and other victories in over a dozen ERISA cases. ECF No. 108-2, Second Specht Decl. ¶¶ 3–4. Class Counsel's experience and qualifications are further summarized in the accompanying declaration. *See id.* ¶¶ 3–9.

While this experience is significant and Class Counsel has provided the class quality representation, it does not necessitate diverging from a baseline, reasonable median fee of 25%.

### 3. *Public Policy Considerations*

Public policy considerations also support awarding counsel a reasonable fee of 25%. Protecting workers' retirement funds is of genuine public interest because private enforcement of ERISA is a necessary component of pension law enforcement. *Marsh*, 265 F.R.D. at 149–50. Given the important role that private enforcement plays in pension law, generally, it is important for the Court to provide counsel with sufficiently compensatory rates to encourage continued private enforcement. *See In re Veeco Instruments Inc. Sec. Litig.*, 05 MDL 1695 (CM), 2007 WL 4115808, at *3, *8 (S.D.N.Y. Nov. 7, 2007) (noting the "commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest") (quoting *Goldberger*, 209 F.3d at 51). Class Counsel have provided no special factors warranting an increase or decrease in the baseline percentage based on the unique public policy considerations of this case or class of ERISA litigation.

Thus, this factor warrants no adjustment to the baseline percentage described above.

### C. Lodestar Cross–Check

The last *Goldberger* factor to consider is the time and labor expended by counsel. The Court evaluates this factor by calculating the lodestar as a cross-check to the reasonableness of the percentage fee—which necessarily involves reviewing Class Counsel's time and labor expended.

9

The lodestar is "based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate." *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (citing *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989)). "Once that computation is made, the district court may adjust the multiplier based on other factors such as the risk of the litigation or the performance of the attorneys." *Colgate-Palmolive*, 36 F. Supp. 3d at 348. "Typically, courts use multipliers of 2 to 6 times the lodestar." *Solis v. OrthoNet LLC*, No. 19-CV-4678 (VSB), 2021 WL 2678651, at *4 (S.D.N.Y. June 30, 2021) (quoting *Asare v. Change Grp. of N.Y., Inc.*, No. 12 CIV. 3371 (CM), 2013 WL 6144764, at *18 (S.D.N.Y. Nov. 18, 2013)).

"Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable." *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009) (citing *Goldberger*, 209 F.3d at 50). Thus, the Court accepts Class Counsel's declaration concerning the number of hours worked. Nichols Kaster worked approximately 834 hours—between attorneys and support staff—and attorneys and staff at Garrison worked a total of 5.4 hours. Given the discovery disputes, motion practice, and preparation for final settlement, the Court finds that these hours are reasonable.

However, the Court will not calculate the lodestar based on Class Counsel's proposed fee structure. *See* ECF No. 108-1 at 17–18. Nichols Kaster's billing rates for ERISA actions range from $725 to $950 an hour for more senior attorneys, $425 to $500 an hour for less experienced attorneys, and $250 an hour for support staff. *Id.* This fee structure is out of line for attorneys practicing ERISA litigation in this District.

"The lodestar figure should be based on market rates 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and

10

reputation.'"  *Reiter*, 457 F.3d at 232 (alteration in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum*, 465 U.S. at 895 n.11; *see also Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 45 (2d Cir. 2012) (affirming district court's analysis of the reasonable market rate for similar attorneys in the district).  The Court is mindful that "[t]he determination of fees 'should not result in a second major litigation'" and "trial courts need not, and indeed should not, become green-eyeshade accountants."  *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  A court should seek to "do rough justice, not to achieve auditing perfection."  *Id.* at 838.

The Second Circuit "has instructed that determination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel,' an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'"  *Townsend*, 679 F.3d at 59 (quoting *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005)).  Factors for setting a reasonable hourly rate include "the time and labor required," "the novelty and difficulty of the questions," and "the level of skill required to perform the legal service properly," in setting the reasonable hourly rate.  *See K.L. v. Warwick Valley Cent. Sch. Dist.*, 584 F. App'x 17, 19 (2d Cir. 2014) (summary order) (citation omitted).

Class Counsel have not included affidavits from ERISA attorneys "in this District describing local prevailing rates, as is often customary when petitioning for attorneys' fees."  *Strauch v. Computer Scis. Corp.*, No. 3:14-cv-956 (JBA), 2020 WL 4289955, at *5 (D. Conn. July

27, 2020) (collecting cases).  While Class Counsel have directed the Court to cases outside of this Circuit where district courts have awarded higher than prevailing rates—including cases involving Nicholas Kaster—Class Counsel have not provided any evidence as to why the prevailing rates for experienced ERISA attorney in Connecticut should not apply in calculating the lodestar.

Accordingly, the Court turns to findings made by other courts in this District as to prevailing rates for ERISA attorneys in Connecticut.  Courts have found reasonable rates for senior attorneys and partners that specialize in ERISA actions in this District between $400 and $450 an hour.  *See S.B. v. Oxford Health Ins., Inc.*, No. 3:17-cv-1485 (MPS), 2020 WL 1702223, at *2 (D. Conn. Apr. 8, 2020) (awarding between $400 and $450 for senior ERISA attorneys practicing in Connecticut).  As for more junior attorneys, courts have awarded rates as high as $200 an hour for first-year attorneys.  *See Howell v. Yale Univ.*, No. 3:22-cv-1160 (JCH), 2023 WL 4564409, at *4 (D. Conn. July 17, 2023) (collecting cases).  Class Counsel's rates are far out of line with the rates of ERISA attorneys practicing in Connecticut, and Class Counsel have not provided support for why the Court should apply a higher rate than is prevailing in Connecticut.  *See Savoie v. Merchants Bank*, 166 F.3d 456, 463–64 (2d Cir. 1999) (affirming a lower hourly rate than requested by counsel where counsel failed to provide evidence that a higher rate was warranted because he was the only lawyer in the district capable of conducting the litigation).  Courts in this district have found that the reasonable hourly rate for support staff to be around $140 an hour.  *A. v. Hartford Bd. of Educ.*, No. 3:11-CV-1381-GWC, 2017 WL 187138, at *7 (D. Conn. Jan. 17, 2017).

Based on the prevailing rates in this District, the Court calculates Nichols Kaster's attorneys at the rate of $400 an hour for senior attorneys, $250 an hour for more junior attorneys, and $150 for support staff; the Court calculates local counsels' fees—which is not broken down

between senior attorneys, junior attorneys, and staff—using the rate of $300 an hour to approximate the costs between the billing rates for various staff. Based on the District's prevailing rates and hours provided by counsel, the lodestar equals $231,750.00 in attorney fees. With a 25% fee award ($1,025,000.00), the multiplier would be 4.423; with the 33% fee award requested ($1,366,666), the multiplier would be 5.897. While even the 4.423 multiplier is at the higher end of what courts have found to be reasonable, this Court finds that it is reasonable in this case, especially when compared to the multiplier of nearly 6 applicable to Class Counsel's requested fee.

Thus, considering all the *Goldberger* factors and the lodestar cross-check, an attorney fees award at 25% of the total fund is a reasonable for this case.

### IV.  LITIGATION EXPENSES AND SETTLEMENT ADMINISTRATION EXPENSES

Class Counsel's request for litigation expenses in the amount of $48,980.72 and settlement administration expenses in the amount of $106,895.23 is approved. The Court has reviewed these expenses and finds that they are reasonable and appropriate given the nature of this action.

### V.  SERVICE AWARDS

Further, Plaintiffs' request for class representative service awards in the amount of $5,000 each to Named Plaintiffs Chris Carrigan, Michael Venti, and Sylvain Yelle ($15,000 total) is approved. The Court finds these awards to be justified under the facts of this case and consistent with applicable legal authorities.

### VI.  CONCLUSION

For the reasons described herein, Plaintiffs' motion for attorneys' fees and costs, administrative expenses, and class representative awards is GRANTED in part and DENIED in part.

The Court awards attorneys' fees in the amount of $1,025,000 (one-fourth of the $4.1 million Settlement Fund), reimbursement of $48,980.72 in litigation expenses, $106,895.23 in settlement administration expenses, and $5,000 service awards for each of the three Class Representatives.

**SO ORDERED** at Hartford, Connecticut, this 16th day of April, 2024.

                                                 */s/ Sarala V. Nagala*
                                                 SARALA V. NAGALA
                                                 UNITED STATES DISTRICT JUDGE